285 So.2d 117

**Ronald Faires McCAY, alias**

**v.**

**STATE.**

**6 Div. 263.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

Rehearing Denied Sept. 25, 1973.

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

James D. Forstman, Richard L. Taylor, Birmingham, for appellant.

CATES, Presiding Judge.

Robbery: sentence, ten years.

I

About 2:30 P.M. January 14, 1969 a white male with a rifle entered a Green Front (ABC Store No. 30) on Bethel Avenue in Tarrant City. He said, "This is a stick-up. Put the money on the counter."

George Sumner, the State's first witness, was the cashier. The robber turned to him and said, "Get the gun out of your pocket, or I will kill you." Sumner told him that he had none.

Then the other cashier, Walter R. Graves, put the money on the counter. The robber departed with it after telling

the four employees present to walk to the back of the store.

Sumner testified on voir dire that the appellant whom he identified as the rifleman was in the state owned monopolistic emporium "not over ten minutes."

Thereafter, in August Sumner ·next saw McCay in a lineup. (R. 28). Later he observed the appellant at the preliminary hearing. It was on this occasion that Sumner finally concluded that McCay was the culprit.

The chief thrust of appellant's argument is that the trial judge erred in denying his motion to suppress the evidence of his lineup identification. We shall elaborate on the lineup testimony.

On August 20, 1969 (seven months, six days after the holdup), appellant was placed in a lineup with four other white males and viewed by the four ABC employees present at the time of the robbery. McCay's attorney was present with a court reporter. His counsel examined the four employees, later introducing a transcript of the examination into evidence at the motion hearing (R. 57).

Counsel objected to the lineup on several grounds (R. 60), one of which protested the apparel of the members of the lineup. The appellant was wearing a "bright colored shirt with bright orange-blue-and white stripes" and green pants; the other members had on plain shirts and pants except for number 5, who wore a "very dull pattern, light blue, short-sleeve shirt, which has a real fine pink in it, and probably a little yellow."

George W. Sumners identified appellant as the robber (R. 62):

"A. I wouldn't be positive, but it appears that it's number three. I couldn't say for positive, that [sic] that is as near as * * * ."

Sumners had not seen any pictures of appellant before the lineup.

John Mayes stated that the robber was not in the lineup (R. 64). However, before the jury Mayes, on cross, testified in part:

"Q Are you telling us and the ladies and gentlemen of the jury the man that robbed that store could not have been in .the lineup, or you don't know?

"A I didn't say he was not in the lineup. I am not going to perjure myself. I didn't recognize him. I don't know if he was in the lineup, or not. He could have been."

John Moore identified appellant as the robber, basing his conclusion on complexion, size, and hair. Moore stated that appellant was not conspicuously dressed.

Walter Graves, whose cash register was emptied of paper money, testified that he saw in the lineup "Someone that looks like it, but I can't be sure." (R. 70). He identified appellant saying that none of the others came close, but "I wouldn't swear to it." Graves's basis for identification was "his height, the build, hair, and possibly, his eyes and age." He admitted that appellant's dress made him stand out from the others, and that other members of the lineup were shorter or did not approximate the appearance of his assailant.

Sumners testified at the hearing that he and Mr. Graves were operating the cash registers on the day of the robbery, and that the robber stayed in the store under ten minutes. Though he was not positive in his identification of McCay at the lineup, he later became convinced from watching McCay walking around at preliminary hearing. (R. 29) He testified that other members of the lineup were heavier or lighter than McCay, and some were taller or shorter. He could not remember what appellant had been wearing at the lineup.

The defendant testified at the hearing (but not before the jury) that he had worn a checked shirt and green pants at the lineup while all the others had on blue shirts

and black pants, except one. These were civilian clothes or street clothes, not a jail uniform. (R. 46)

Officer Phillips testified that he set up the lineup with Deputy Lawley, requesting him to get others "similar in description" to McCay. Phillips listed the members of the lineup and wrote their age and weight, obtained by asking each individual, after their names, substantially as follows:

| | | | | |
|---|---|---|---|---|
| Ronald McCay | 154 lbs. | 24 | | (checked shirt, green pants) |
| Billy Johnston | 175 lbs. | 27 | 5'11½" | (white T-shirt, black striped pants) |
| William Davis | 165 lbs. | 28 | 5'10" | (blue shirt, checked pants) |
| Jerry Adams | 170 lbs. | 27 | 5'10" | (blue shirt, black pants) |
| Charles T. Smith | 165 lbs. | 28 | 5'11" | (blue checked shirt, blue pants) |

———◆———

Phillips testified that there was no appreciable difference as to weight, age, dress, or height among the members of the lineup. (R. 47–52) All members of the lineup were wearing street clothes.

John Moore testified that he was present at the robbery and lineup, and had looked at several pictures before the lineup, none of which portrayed the defendant.

Walter Graves's evidence was essentially the same, but on cross examination he stated:

"A Well, the other defendants in lineup were either too fat, or too old. They had different color hair. They just didn't fit at all. (R. 101)

*    *    *    *    *    *

"A There was nobody else in the lineup that was anywhere close to the man that robbed the store that day, other than the defendant." (R. 102)

He later stated (R. 105) that there was not ten pounds variation between McCay and three of the others, but the fifth one was fat. He did not remember McCay being dressed conspicuously.

After the jury returned, Moore testified that the defendant was in the store for only "a minute, or two, maybe."

McCay's defense was alibi.

*    *    *

Kirby v. Illinois, 406 U. S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, did not alter the rule excluding "unnecessary suggestive" lineups. An unfair lineup which is relied upon by the prosecution should still be excluded from the evidence whether it preceded or followed the indictment. Whether a lineup is so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process is to be determined from the totality of the surrounding circumstances. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402.

In this case the eyewitnesses had only a short time to view the robber. One was waiting on a customer and unaware of the robbery for a while and another was taking a break, sitting on a box in a corner.

The lineup was held seven months and six days later. One employee stated that he could not say the robber was in the lineup; the other three picked the defendant with varying degrees of certainty. Of the five members of the lineup the defendant was the youngest and weighed the least. He was in the middle with two men on each side. He wore orange plaid and green while the others wore various plainer hues. There was no corroborating evidence. The jury gave the defendant the minimum sentence for robbery.

The question is not whether the lineup is suggestive to an appellate judge, but

whether it was suggestive to the witnesses who viewed the lineup.

The Alabama Law Enforcement Officer's Handbook concerning the conduct of lineups provides in part;

"In arranging the lineup, it is preferable to have at least five other persons in a group with the suspect. All of them should be of the same sex and race and they should be of the same approximate age, height, weight, coloring and manner of dress. There must be no indication of whom the suspect might be. Allow the suspect to choose his location in the lineup and if during the course of the lineup he indicates a desire to change places let him do so." p. 59

\*　\*　\*　\*　\*　\*

"It is particularly important to keep the lineup uniform in all respects. This means that nothing should be required of the suspect which is not required of the other participants. If any member of the group is asked to make a particular gesture, repeat a particular phrase or put on or take off any article of clothing, the same should be required of each participant and should be requested in the same tone of voice." p. 60

While obviously not mandatory, the guidelines furnish an illustrative standard in conjunction with the totality of circumstances test.

Here we have compliance with United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, as to counsel being present at lineup. We apparently have also compliance with Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, in that the defendant was attended by counsel at the preliminary hearing.

The trial judge very carefully listened to the entire testimony with respect to the pre-trial motion to suppress. This motion, while not truly a pre-trial one, since it was initiated after the jury was selected, nevertheless, was conducted as though it were a pre-trial motion. The judge overruled the motion.

Hence, the only question with respect to the identification was whether or not the totality of circumstances would require as a matter of law that the defendant go free.

■ We do not think that this is a proper case for the application of so drastic a penalty upon the prosecution. Here the defendant was in varying degrees identified by more than one witness Some were able to give reasonably good details, others were not. McCay's alibi testimony was quite threadbare.

■ Though there might be some conflict or hesitancy in the identifying witnesses' testimony, nevertheless the weight thereof goes to the jury for its consideration. Coleman v. State, 44 Ala.App. 429, 211 So.2d 917.

### II

■ Appellant's secondary attack, relies on *Adkins,* 38 Ala.App. 659, 93 So.2d 519 [1] to demonstrate reversible error. The following appears in closing argument for the state:

"MR. PURVIS: Now, let me say this: If there had been any proof that that lineup was tainted in any way, that lineup would never have been brought in here before you.

"MR. FORSTMAN: We object to that, Your Honor and move it be stricken from the record.

"THE COURT: Overrule.

"MR. FORSTMAN: We except.

1. Cert. den. without opinion. *Adkins,* 265 Ala. 666, 93 So.2d 522.

"MR. PURVIS: And, let me say this: Mr. Phillips conducted that lineup exactly as a lineup should be conducted.

"MR. FORSTMAN: We object to that. That calls for a conclusion of counsel as to how it should be conducted and Mr. Phillips did conduct it in that manner.

"THE COURT: He may draw any reasonable inference from the evidence.

"Overrule."

In *Adkins,* supra, the State argued that the judge would not have let the case go to the jury if the State had not made out a case. The argument in Wideman v. State, 40 Ala.App. 5, 110 So.2d 295 was to the same effect.

We agree with the Attorney General's argument as to *Adkins* not being applicable. The Attorney General, in brief, p. 6, states as follows:

"Appellant cites as authority the case of Adkins v. State, 265 Ala. 666, 93 So. 2d 522. Certainly the *Adkins* Case is distinguishable from the case at bar because in *Adkins,* supra, the statement was to the effect that the Court had already determined that the State had proved their case. In the case at bar the statement was that if the lineup had been tainted it would have never been brought before the jury. There is no reference to the Court approving the lineup or the identification within such lineup. In fact, one could construe the statement as meaning that the prosecution would not have brought the lineup before the jury if the prosecution had thought it had been tainted in any way."

The judgment below is due to be

Affirmed.

CATES, P. J., and ALMON, HARRIS and De CARLO, JJ., concur.

TYSON, J., not sitting.