HARRIS, Judge.
Appellant was convicted of burglary in the first degree and was sentenced to ten years imprisonment in the penitentiary. Attended by counsel at arraignment he pleaded not guilty and not guilty by reason of insanity. Appellant filed a petition to have his mental competency determined. He was sent to the Alabama State Hospital for observation and examination. The hospital staff composed of three psychiatrists certified that after examination it was their opinion, separately, jointly and collectively, that appellant was sane and competent at the time of his admission to Bryce Hospital, and further that he was sane and competent at the time of the commission of the offense for which he was charged. When this report was filed, appellant withdrew his special plea of not guilty by reason of insanity and went to trial on his not guilty plea. After sentence was imposed, appellant gave notice of appeal and was found to be indigent. He was furnished a free transcript and trial counsel was appointed to represent him on appeal.
Omitting the formal parts the indictment reads as follows:
“The Grand Jury of said County charge that before the finding of this Indictment William H. Quinn, Alias Boomer Quinn whose name is otherwise unknown to the Grand Jury than as stated, did, in the nighttime, with the intent to steal, break into and enter the inhabited dwelling house of Jimmy Wayne Hines, and Betty Hines, located at 1405 Burroughs Avenue, Muscle Shoals, Alabama, said Jimmy Wayne Hines and Betty Hines being the owners of said dwelling house, and in possession of said dwelling house, and at said time, Carol Dickinson, Brigette Hines, Shawn Hines, Timmy Moore and Keith Moore, were the persons lodged therein, against the peace and dignity of the State of Alabama.”
*163 This is a two-volume record covering approximately 400 pages of the transcript but the only real issue raised by appellant concerns the identification procedures utilized by the investigating officers. We will condense our recital of the facts accordingly. The facts concerning the crime are not in conflict except the guilt vel non of appellant as one of the perpetrators.
At 7 o’clock p. m. on April 12, 1975, Mr. and Mrs. Wayne Hines whose home address was 1405 Burroughs Avenue, Muscle Shoals, Colbert County, Alabama, left their home to go to a country club where Mrs. Hines had a singing engagement with a band that was playing for a function at the club that night. They left their children, Shawn, age nine, and Bridgett, age eight, and two visitors, Timmy and Keith Moore, ages 11 and nine, respectively, at their home in care of a baby-sitter, Carol Dickinson, age 13. Carol lived with her family across the street from the Hines’ home.
Around 8:30 p. m. Carol received the first of three telephone calls. The first two of these calls consisted only of “clicks.” These “clicking” calls coupled with the other children hearing noises outside, prompted Carol to take the children to her home across the street. They returned with Carol’s older brother and a friend who was visiting him. Carol’s brother and his friend checked around the house and yard before leaving. While they were still there, the third telephone call came in and the friend answered it and gave the receiver to Carol. The caller learned in his conversation with Carol that Mr. and Mrs. Hines were not due back for several hours. The caller told Carol that he had some papers for Mr. Hines and wanted to come to the house and leave the papers. Carol agreed.
After Carol’s brother and friend left, Carol went about the normal procedures of preparing the children for bed. Carol had the four children take baths and while so doing she made popcorn for them and they looked at television. At about 9 o’clock the three boys looked out a front window and observed two men, one masked, with guns. They reported this to Carol who was somewhat skeptical of the report and went to check for herself. She observed nothing except the outside light was off and would not come on when she flipped the switch. A few moments before the light was on. Shawn Hines knew what he had seen and suspected the worst and he immediately went to the telephone, dialed “0” and told the operator to send the police. In the meantime there was a knock at the door. Over the protest of one of the boys Carol went to the door and a male voice said, “This is Mr. Hines’ papers.” Carol unlocked and opened the door and a masked man shoved the door and Carol back and entered the house, followed by the unmasked man. Of the five young persons in the house only one observed the unmasked man long enough to identify him. Timmy Moore hid behind the dining room table when the thieves first came in the house and observed the burglar putting on his mask. The burglars tied and gagged the boys and Carol with tape. Bridgett Hines was pulled from her bath and was also tied and gagged.
After tying and gagging the children the burglars began to ransack the house. A gun cabinet was smashed and 15 to 20 guns and rifles were placed near the front door. However, as a result of the quick action of Shawn Hines the police arrived within minutes of the burglary. One officer looked in a window and saw the five children bound and gagged lying on their stomachs on the floor of the living room. The officers made themselves known and ordered the burglars to come out. The thieves left the house by a rear window and escaped, abandoning appellant’s car which was parked in front of the house. Appellant admitted owning the automobile but claimed it was stolen. The alleged theft of the automobile was noticed only after the burglary and was reported stolen only after appellant learned of a police bulletin (APB) on one Spencer Burns in whose name the automobile was registered.
After escaping from the Hines’ home the burglars went to the Shop Rite Store nearby and took a cab to their places of residence.
*164 There were three eyewitnesses to various events surrounding the burglary and the identity of the participants, and the pretrial identification procedures used on each were different.
After the burglary the children were shown a number of photographs including two of appellant, one showing his broken or missing front tooth, the other not showing it. None of the children was able to identify the burglars except Timmy Moore. He immediately identified the photographs of appellant. Carol Dickinson said, “I believe that this might be one,” pointing to one of the other photographs. To this Timmy Moore immediately replied, “No, that’s not the one,” then, pointing to the pictures of appellant, said “This is the man I saw.” The trial court took great pains to insure that no officer or other person made the slightest suggestion that the officers were interested in the children identifying any of the men whose photographs were displayed to the children.
Roy Gamel was the cab driver who drove the burglars from the Shop Rite Store. Appellant rode in the back seat of the cab. This fact, coupled with brain damage sustained by Mr. Gamel while in service and subsequently, made him the worst of the three eyewitnesses. However, the record fails to reflect that Mr. Gamel was subjected to any pretrial police identification procedures involving appellant. He did identify appellant’s accomplice, Eddie Martin, in a lineup, but appellant was not under suspicion at that time. Gamel commented that one Joe Johnson, who was in the lineup, looked like the other man who rode in his cab from the Shop Rite Store.
Joe Johnson testified and the jury was, therefore, able to judge if he in fact looked like appellant. Appellant was arrested and charged with the offense as a result of Johnson’s statement to the police, which he gave after this lineup. Johnson was not involved in any manner with the burglary.
Mrs. Lou Aldridge was employed at the Shop Rite Store where the burglars called the cab after escaping from the police at the Hines residence. Appellant came in the store first and Martin came in immediately thereafter. Appellant was inside the store with Mrs. Aldridge for at least five minutes. He talked to Mrs. Aldridge and purchased a magazine from her. When the cab arrived appellant started out the door and Mrs. Aldridge called him and told him he forgot his magazine and appellant went back in the store and picked up the magazine.
Mrs. Aldridge viewed the same lineup that Mr. Gamel viewed but not at the same time. She identified Martin. Appellant was not in this lineup. Later Mrs. Aldridge viewed the same series of photographs that Timmy Moore had seen and without the slightest hesitation she identified the two pictures of appellant.
Gamel, Mrs. Aldridge and Timmy Moore made positive in-court identifications of appellant.
The trial court asked each officer who displayed the photographs to the State’s witnesses if that officer or any person in his presence and hearing made any suggestion as to which photograph they should identify or not identify and each officer answered, “No, sir.” The Court also asked if any officer or other person made a statement to any State witness that any person depicted in the photographs was or was not a suspect in the case and each answered, “No, sir.”
Appellant filed a pretrial motion to suppress the testimony of Timmy Moore, Ga-mel and Mrs. Aldridge on the ground that their identification of appellant was made from photographs that were unduly suggestive. Much testimony was taken on this motion out of the presence and hearing of the jury. The motion was overruled and denied.
Appellant claimed that at the time of the burglary he, Eddie Martin, Rita Kilo and others were at a nightclub some 20 miles away. His testimony was contradicted by Rita Kilo and Joe Johnson who testified that they were at the nightclub, and that appellant and Martin were not at the club any time that night.
*165 The question of suggestiveness must be decided on the basis of the totality of the circumstances. McCay v. State, 51 Ala.App. 307, 285 So.2d 117; Thomas v. State, Ala.Cr.App., 332 So.2d 168; Frazier v. State, Ala.Cr.App., 331 So.2d 404.
Our review of the circumstances surrounding the apprehension of appellant and the police conduct which led to his identification satisfies us that the claim that appellant was denied due process of law is without merit. There was no “substantial likelihood of irreparable misidentification.” The officers showed these witnesses nine photographs which included two photographs of appellant. On of the photographs of appellant showed a missing tooth and they immediately identified appellant. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.
We have carefully examined the record for errors which injuriously affected the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
HARRIS, TYSON and DeCARLO, JJ., concur.
CATES, P. J., and BOOKOUT, J., concur specially.