[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 517 
The appellant was indicted and convicted for the offense of rape. Pursuant to the verdict and punishment fixed by the jury, the trial court entered judgment accordingly and sentenced the appellant to a term of fifty years imprisonment. The appellant was found to be indigent and counsel was appointed to represent him both at trial and on appeal.
On the night of Friday, September 3, 1976, Mrs. Ann Faulkenberry was traveling, with her sixteen month old son, from Montgomery to Toxey, Alabama. She was traveling on Highway 64 and passed through the town of Thomaston to arrive in Marengo County a little past nine o'clock that night.
In traveling along Highway 64, right before she entered Thomaston, she noticed a gold or beige pickup truck. The truck passed her several times and she passed the truck several times. The truck ran Mrs. Faulkenberry off the road striking her automobile and damaging her left front fender.
After being struck by the pickup truck, she regained control of her automobile and returned to the highway where she stopped. Mrs. Faulkenberry testified that she got out of her car to talk to the occupants of the pickup truck for insurance purposes. The truck stopped right in front of her.
As she approached the truck a young man got out on the passenger's side and another young man got out of the driver's side with a rifle with a black telescope in his hand.
Upon seeing the rifle, Mrs. Faulkenberry attempted to return to her automobile. As she was getting in her car and trying to close the door, the young man without the rifle grabbed her arm and told her in the most crude and vulgar language that he wanted to have sexual intercourse with her. He then pulled her out of the car and dragged her across the highway where he threw her into a ditch and raped her. It is not necessary to recount the details of the physical act of rape. Suffice it to say that the testimony shows that it was accomplished not only by force but by brutality and was more than sufficient to satisfy the legal elements and requirements for the crime of rape.
After having ravished Mrs. Faulkenberry, her assailant dragged her over to a fence where the appellant had moved the car and the truck. Again, omitting the heinous details, the evidence is more than sufficient to show that Mrs. Faulkenberry was raped again. At trial, she identified the appellant as the second man to rape her. While the appellant defiled Mrs. Faulkenberry, his accomplice held his hand over the mouth of the small child to stifle his cries.
After the appellant and his companion had satisfied their lustful desires, they searched Mrs. Faulkenberry's automobile. They took all the money she had and in addition stole a xerox copy of her typewritten resume. They questioned her about the various items they found in her automobile, threatened her, and shined a "short and red" flashlight in her face. The appellant and his accomplice siphoned almost all of the gas out of her automobile.
They then told her to get in her car and "drive normal"; that they would be behind her with a gun pointed at her head and she was not to stop. Mrs. Faulkenberry testified that she just kept driving and eventually *Page 518 
stopped where she saw a light in a house.
She ran into the house and its occupants telephoned the sheriff of Choctaw County. She was taken to the emergency room in Butler, Alabama, that night and examined by Dr. Clark. Based on this examination Dr. Clark determined that there was a "rather heavy" deposit of sperm in the vagina of Mrs. Faulkenberry.
While at the hospital she was interviewed by Chief Deputy Bridges of the Marengo County Sheriff's Department. After Deputy Sheriff Bridges took her statement, she took him back to the location in Marengo County where she had been raped.
On Wednesday, five days after the crime, Mrs. Faulkenberry viewed two line-ups at the Marengo County Jail and positively identified the appellant as being one of her assailants. Mrs. Faulkenberry also identified her first assailant, Ralph Crear, in the first line-up. On that same day, Mrs. Faulkenberry identified the pickup truck that the appellant and his companion were driving. This truck was selected from among a number of trucks without any assistance from any law enforcement officer. She had previously described the truck as being a fairly new truck with "wooden planks" on the back like a homemade cattle body.
Robert Wesley was the Chief of Police of Thomaston, Alabama. Two days after Mrs. Faulkenberry was raped, he observed a black Chevelle with a Wilcox County tag backing into the shadows of a store in Thomaston, Alabama. He followed the Chevelle after it pulled away from the store and then stopped it. As he got out of his car and began to approach the Chevelle, the vehicle took off at a high rate of speed. He observed that there were two occupants in the Chevelle although he could identify neither one.
A high speed chase ensued. When Chief Wesley got close enough to the Chevelle to stop it again, he encountered gunfire directed at him and coming from the vehicle. After the shots were fired, the Chevelle managed to elude Chief Wesley.
This same vehicle was found in Wilcox County late Sunday night on a dirt road. A Criminal Investigator for the State of Alabama, George H. Jones, examined the automobile for evidence and found thirteen 30-30 caliber rifle hulls and a long green hose. The hose had a strong odor of gasoline in it.
Investigator Jones continued his investigation the following day and Monday morning in "a continuing search" found two pickup trucks concealed in a wooded area. The two trucks were located in an area about two and one-half to three miles from the spot where the Chevelle was found. One of these vehicles was a white over gold 1975 Chevrolet pickup truck with a cattle bed on it. Three yearlings were in this truck. Jones noticed that the right front corner of this vehicle was damaged. He also found a lens cover for a telescopic rifle sight lying near the other truck.
Investigator Jones placed a stakeout on these two vehicles. Subsequently, two subjects approached the vehicles but ran when inadvertently alerted to the presence of law enforcement officers. The appellant was positively identified as one of these men. Dogs and helicopters were immediately called to aid in the capture of the two men. The following day, Tuesday, September 7, 1976, Ralph Crear and the appellant were arrested in a pasture some two and one-half miles from the scene of the stakeout.
The Sheriff of Marengo County, Billy Smith, also aided in the investigation and eventual apprehension of the appellant and his accomplice. While searching the interior of the gold pickup truck he found the resume of Mrs. Faulkenberry under the driver's seat.
Sheriff Smith testified that he first saw Ralph Crear running across a dirt road carrying a rifle. Crear began shooting at the Sheriff and other law enforcement officers engaged in the search. Crear made his way down through a creek and was arrested only ten to fifteen yards from a little slough or pond. A rifle was found in this pond of water which Crear had come out of.
The appellant was arrested some thirty minutes after Crear was apprehended. *Page 519 
Upon his arrest, a red flashlight was taken from the appellant.
A criminalist for the State of Alabama, Department of Toxicology and Criminal Investigation examined both the rifle recovered from the pond and the hulls found in the Chevelle. From his examination he was able to determine that the hulls were fired from that particular rifle to the exclusion of all other weapons.
An examination of the hose found in the Chevelle revealed that it smelled of gasoline. Scratches and markings on the hose were characteristic of a hose which had been used as a siphon. The lens cover found near the gold pickup truck physically fit the scope on the rifle.
The criminalist also removed some blue paint from the damaged area of the gold pickup truck. Paint from the victim's automobile was also examined. The criminalist concluded that both paint samples were translucent blue paint of the same color.
At trial, the appellant subpoenaed Ralph Crear to testify in his behalf. However this witness refused to testify on the basis of his attorney's advice and on the grounds that it would incriminate him.
Against the advice of counsel, the appellant took the witness stand and testified in his own behalf. He testified that the first time that he ever saw Mrs. Faulkenberry was on September 7, 1976, when she came to the Marengo County Jail to view him in a line-up. He denied any knowledge or participation in the rape.
The appellant further testified that he had never seen Ralph Crear before he was arrested for the rape charged against him. Crear took the witness stand and corroborated this point.
The appellant stated that on September 3, 1976, the day of the rape, he was in Jefferson County. He maintained that he did not arrive in Marengo County until the following Sunday morning. He stated that he hitchhiked from Jefferson County and was arrested while he was walking to his aunt's home in Linden.
On rebuttal, the state produced Juanita Crear, the stepmother of Ralph Crear. She testified that she had seen the appellant at her home with Ralph on the third Saturday in August of 1976.
 I
The first argument advanced by the appellant is that the trial court allowed into evidence facts relating to two subsequent crimes committed by the appellant. It is the contention of the appellant that the evidence as to the black Chevelle and its occupants shooting at the police chief in Thomaston (occurring two days after the rape) and the evidence of the two pickup trucks (occurring three days after the alleged rape) constituted totally irrelevant evidence and was highly prejudicial to the appellant. The appellant complains that in addition to being tried for rape, he was also tried for assault with intent to murder a police officer and cattle theft. There is no evidence before this court that the appellant is or has ever been charged or indicted with assault or cattle theft. There is absolutely no evidence in the record that the appellant was apprehended in the act of stealing cattle. The record does reveal the presence of cattle in the two pickup trucks but nothing further with regard to any charge or act of rustling.
It is a general rule of evidence that evidence of separate and distinct criminal acts other than the offense charged in the indictment is inadmissible. 6 Alabama Digest, Criminal Law, 369.1 et seq. However, there are well-recognized exceptions to this rule and one of paramount importance is the "identity exception". Murphy v. State, 52 Ala. App. 490, 294 So.2d 457, cert. denied, 292 Ala. 743, 294 So.2d 462 (1974).
 "But this general rule is not to be followed blindly and evidence rejected on the sole ground that it does show the commission of another crime. If evidence is relevant and competent it should be admitted regardless of its incidental effect. Accordingly it is held that evidence of another crime is admissible *Page 520 
where it tends to identify the accused." Wilkins v. State, 29 Ala. App. 349, 197 So. 75 (1940).
We are not concerned with similar acts or transactions to show the commission of the charged crime. Indeed, proof of the subsequent acts would not show merely a tendency or disposition of the appellant to commit the crime with which he is charged.Hinton v. State, 280 Ala. 48, 189 So.2d 849 (1966).
Both subsequent incidents tended to show the flight of the appellant and his accomplice. Evidence of flight is admissible even though it is weak or inconclusive or if several days have passed since the commission of the crime. Pierce v. State,51 Ala. App. 166, 283 So.2d 618 (1973).
Mrs. Faulkenberry testified that the appellant and Crear siphoned gas from her car. A length of garden hose was found in the trunk of the Chevelle. The hose smelled of gasoline and the scratches and markings on it indicated that it had been used to siphon gas.
Thirteen 30-30 caliber hulls were also found in the Chevelle. When Crear and the appellant were arrested, a rifle was found in that same general area. Although Crear had been seen with a rifle and had been shooting at law enforcement officers, no other firearm was found. Expert examination and testimony revealed that the hulls were fired from the rifle. Mrs. Faulkenberry identified the rifle as being similar to and "looking like" the rifle she had seen the night of the rape. Therefore, the presence of the appellant in the Chevelle is relegated to a question for the jury. Certainly there is circumstantial evidence that he was in the Chevelle fleeing from Chief Wesley.
We now turn to the finding of the pickup trucks. Both trucks were found abandoned in the woods near Thomaston. Mrs. Faulkenberry described the truck driven by the appellant and Crear as being gold in color with wooden planks on it like a cattle body.
One of the trucks found matched this description. Additionally, found inside this truck was the resume of Mrs. Faulkenberry which she testified the appellant and Crear had taken from her the night of the rape. Also found near this truck was a lens cover which physically fit the telescopic scope on the rifle previously discussed.
Finally, the appellant was positively identified as one of the two individuals who walked down the road toward the abandoned and concealed pickup trucks. He ran when he realized law enforcement officers were present. When apprehended, the appellant had in his possession a flashlight which Mrs. Faulkenberry testified was the same flashlight the appellant and Crear kept flashing in her face the night of the rape.
Any testimony tending reasonably to establish the probability or improbability of a fact in controversy is admissible.Holland v. State, 25 Ala. App. 147, 142 So. 112 (1932). The test of probative value or relevancy of a fact is whether it has any tendency to throw light upon the matter in issue even though such light may be weak and fall short of its intended demonstration. McCain v. State, 46 Ala. App. 627, 247 So.2d 383
(1971). Considering the evidence in this case and the issues as framed by that evidence, the one major fact in issue was the identity of Mrs. Faulkenberry's attacker. That was the major issue in the case.
Facts which naturally lead the human mind to a conclusion connecting the defendant with the crime charged are always relevant; the law of evidence being the essence of common sense. Jones v. State, 18 Ala. App. 626, 93 So. 332 (1922). Here the testimony as to the subsequent actions of the appellant was properly admissible because it tended to reasonably establish the probability of a fact in controversy. Hunter v. State,38 Ala. App. 351, 83 So.2d 737 (1956); see also Weems v. State,236 Ala. 261, 182 So. 3 (1938) where in prosecution for rape, prosecutrix testified that group who raped her, including accused, took a white-handled knife and fifty cents from her, and deputy sheriff was allowed to testify that he found a white-handled *Page 521 
knife and fifty cents on one of the group other than accused. The testimony was properly admitted despite the fact that it revealed the commission of subsequent crimes by the accused.
 II
The second argument of the appellant is that the trial court erred in refusing to allow the appellant to waive his right to counsel and conduct the remainder of the trial without counsel and by representing himself.
After three witnesses had testified for the state, the appellant stated to the court that he did not want to be represented by his court appointed attorney. The basis of the appellant's demand appears to be that his attorney was "not representing certain facts," was not "bringing out the issues", and had not properly investigated his case.
A colloquy between the trial court and the appellant revealed that at the arraignment the appellant informed the court that he did not want to be represented by any attorney from Marengo County but wanted instead to be tried in Mobile. The trial court appointed an attorney to represent the appellant despite this. The appellant made no objection to this appointment until after the state had presented the testimony of three witnesses.
It affirmatively appears from this colloquy that the appellant did not want to represent himself but was dissatisfied with the performance of his court appointed attorney. Moreover the trial court stated that on arraignment, the appellant was given ample opportunity to obtain the attorney of his choice and furthermore that the appellant was not able to represent himself and that it would constitute an "injustice" to allow him to attempt such.
Any defendant has a constitutional right to conduct his own case without the aid of counsel. Article 1, Section 6, Constitution of 1901, Code of Alabama 1940; Luckie v. State,55 Ala. App. 642, 318 So.2d 337, cert. denied, 294 Ala. 764,318 So.2d 341 (1975). While an indigent defendant has an absolute right to counsel, he has no right to designate which attorney the court is to appoint. United States v. Sexton, 473 F.2d 512
(C.A. 5 1973). A defendant's freedom of choice of counsel may not be manipulated to subvert the orderly procedure of court or to interfere with the fair administration of justice. Sexton, supra Fisher v. State, Ala. App., 346 So.2d 4 (1977). The trial court found that the appellant's court appointed attorney was a very able and capable lawyer who did everything he could to assure the appellant proper and adequate representation. We concur in that finding and hold that the trial court did not commit error in refusing to discharge the trial counsel of the appellant.
 III
The final argument of the appellant is that the line-up was so unnecessarily suggestive and so conducted as to result in a basic unfairness to the accused. It is claimed that because the appellant was four inches shorter than the other men in the line-up the line-up was suggestive.
Whether a line-up is so suggestive and illegal as to require exclusion of a witness's in-court identification of the accused is to be determined from the totality of the surrounding circumstances. Jackson v. State, 56 Ala. App. 276, 321 So.2d 243
(1975). The circumstances here show a fair and nonsuggestive line-up. The fact that there was some slight discrepancy in height does not make the line-up suggestive. Harris v. State,57 Ala. App. 558, 329 So.2d 618 (1976); McCay v. State,51 Ala. App. 307, 285 So.2d 117, cert. denied, 291 Ala. 788,285 So.2d 122 (1971). Contained in the record on appeal is a color photograph of the individuals in the line-up. We have carefully reviewed that picture together with the testimony in this case and find that the line-up was conducted according to proper constitutional safeguards and standards.
This court has conscientiously scrutinized the record on appeal as required by law. Finding no error, we are of the opinion that *Page 522 
the judgment of the trial court is due to be and is hereby
AFFIRMED.
All Judges concur.