Seventy-one-year-old William Hosea Waymon was a cab driver in Mobile. In August of 1981, his body was discovered near his cab with four bullet wounds in his head and neck area. The defendant was indicted for the capital offenses of murder during a robbery in the first degree, Alabama Code Section13A-5-40 (a)(2) (1975), and murder committed while the defendant is under a sentence of life imprisonment. Alabama Code Section 13A-5-40 (a)(6) (1975). A jury found the defendant "guilty of the Capital Offense as charged in the indictment" at the guilt-finding phase of the trial. At the sentence-determining phase, the jury fixed the defendant's punishment at death by a vote of eleven for death and one for life imprisonment without parole. The trial judge then held the hearing mandated by Sections 13A-5-32 and -33, accepted the death penalty recommended by the jury, and sentenced the defendant to death.
The trial and sentencing proceedings were conducted in accordance with Beck v. State, 396 So.2d 645 (Ala. 1981), following the decision of Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Four issues are presented on appeal.
 I
Testing the sufficiency of the evidence by the principles ofDolvin v. State, 391 So.2d 133 (1979), and Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979), we find that the evidence, although circumstantial, was sufficient to permit the jury to exclude every reasonable hypothesis except that of *Page 167 
guilty beyond a reasonable doubt, and was sufficient to sustain the verdict of guilt.
The State's evidence reveals that during the early morning of August 17, 1981, Mr. Waymon picked up his last fare at 12:41. A witness testified that the defendant stated that he wanted to go to Plateau and got into Mr. Waymon's cab at Mike's Cab Stand. The defendant was on parole from a sentence of life imprisonment for a robbery conviction from Clarke County.
The dispatcher tried to contact Waymon by radio even before he went "around the corner." She tried three or four additional times but never did receive any response although Waymon "always answered his radio."
Mobile Police Officer LeRoy Sieck found Waymon's body near his cab at 1:11 that morning, approximately 35 minutes after Waymon had left with the defendant. Waymon had died from four .22 caliber gunshots fired at close range. The body was found in Plateau, in north Mobile, approximately two and four-tenths miles from the cab stand. Only $35 was found in Waymon's shirt pocket although there was evidence that he usually carried a "roll of money" in his pants pocket and could have had as much as $254.81.
It was established that the defendant was residing in Plateau and that his residence was eight-tenths of a mile from the scene of the crime. Witnesses testified that the defendant owned a .22 caliber pistol.
During the month of August, the defendant was employed by Industrial Services and received $373 for that month. The defendant was employed by this company as a "four-fifty an hour laborer" from May 29, 1981, till September 17, 1981.
In August of 1981, the defendant was three months delinquent in his automobile payments. His account was at the "maximum delinquency" and was roughly in the amount of $420. On August 12, 1981, a field representative with General Motors Acceptance Corporation attempted to repossess the car but the defendant refused to release the car. The defendant stated that he "didn't have the money at that time but . . . would try and borrow it and come out to G.M.A.C. and pay it . . . the next day."
The State also showed that the defendant made the following expenditures: on August 18th, the day of the murder, the defendant made a $139 car payment; on September 2nd, the defendant paid $32.74 for an automobile license tag, $297 on his G.M.A.C. account, and $40 as a deposit to Alabama Power Company. The defendant changed his address between August 17th and September 2nd. On November 2nd, his automobile was repossessed because the defendant "never did catch up in his back payments."
Taking all the evidence and the manner in which the individual facts connect and mingle, United States v. Hinds,662 F.2d 362, 367 (5th Cir. 1981), and viewing it in the light most favorable to the prosecution, we find that the evidence excluded every reasonable hypothesis or explanation but that of guilt.
The defendant had the opportunity, the motive and the means to commit the offense.
 II
There was no error in the trial court's refusal of the defendant's written request charge which stated:
 "The Court charges the jury that the possibility of human error or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witness's testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness's identification of the defendant."
In Brooks v. State, 380 So.2d 1012, 1014 (Ala.Cr.App. 1980), we noted that a "requested identification instruction which deals realistically with the shortcomings and trouble spots of the identification process *Page 168 
should be given where the principle has not been covered by the court's oral charge." In Smith v. State, 54 Ala. App. 248, 250,307 So.2d 57 (1975), this Court recognized the above charge as a correct statement of law. However, we have held that there is no basis for such a charge where the witness was positive in the identification, Minnifield v. State, 392 So.2d 1288, 1291
(Ala.Cr.App. 1981); Rowser v. State, 346 So.2d 533, 535
(Ala.Cr.App.), cert. denied, Ex parte Rowser, 346 So.2d 536
(Ala. 1977), or harmless error because identity was never in question. Shields v. State, 397 So.2d 184, 187 (Ala.Cr.App.), cert. denied, Ex parte Shields, 397 So.2d 189 (Ala. 1981).
A number of federal circuit courts have held that requested instructions dealing with the dangers of misidentification by an eyewitness are required where the identification is crucial to the prosecution. United States v. Dodge, 538 F.2d 770 (8th Cir. 1976), cert. denied sub nom., Escamilla v. United States,429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 527 (1977); UnitedStates v. Hodges, 515 F.2d 650 (7th Cir. 1975); United Statesv. Holley, 502 F.2d 273 (4th Cir. 1975); United States v.Telfaire, 152 U.S. App.D.C. 146, 469 F.2d 552 (1972); People v.Hurley, 157 Cal.Rptr. 364, 369, n. 3, 95 Cal.App.3d 895 (1979) (J. Hopper dissenting).
In contrast, some state courts have held that this issue is more properly a concern for cross examination and argument of counsel, implying that such instructions invade the province of the jury, People v. White, 15 Ill.Dec. 815, 58 Ill. App.3d 226,374 N.E.2d 250 (1978); State v. Jordan, 17 Wn. App. 542,564 P.2d 340 (1977), although some courts have held that neither counsel's argument nor cross examination may substitute for proper instructions on mistaken identity. Hodges, 515 F.2d at 653. Still, other courts have held that identification instruction constitutes an improper comment on the evidence and either should never be given, Jordan, 564 P.2d at 341, or great care should be exercised before giving an instruction approved by a federal court because a federal judge may comment on the evidence. State v. Valencia, 118 Ariz. 136, 575 P.2d 335
(1977).
Between these extremes lies the view that the giving of identification instructions is a matter resting within the sound discretion of the trial court. United States v. Collins,559 F.2d 561 (9th Cir.), cert. denied, 434 U.S. 907,98 S.Ct. 309, 54 L.Ed.2d 195 (1977); State v. Higgins, 592 S.W.2d 151
(Mo. 1979), app. dismissed, 446 U.S. 902, 100 S.Ct. 1825,64 L.Ed.2d 254 (1980); State v. Guster, 66 Ohio St.2d 266, 20 Ohio Op.3d 249, 421 N.E.2d 157 (1981); see also People v. Whitmore,86 Mich. App. 177, 272 N.W.2d 346 (1978), vacated on other grounds, 407 Mich. 890, 299 N.W.2d 720 (1979), on remand,100 Mich. App. 214, 299 N.W.2d 721 (1980); Commonwealth v. Wilcox,481 P.2d 284, 392 A.2d 1294 (1978).
This Court recognizes the dangers of eyewitness identification. United States v. Wade, 388 U.S. 218, 228,87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967). Consequently, we are unwilling to hold that cross examination and argument will always supply a sufficient forum in which to cover the issue of identification without proper instructions from the trial judge. See Shields, supra; Brooks, supra. However, we are equally reluctant to hold that identification instructions must be given in every case involving eyewitness identification for, in some cases, the instruction is not needed and would serve only to confuse the jury. See Whitmore, supra; Cf. Shields, supra (identification instruction properly refused because "the identity of the appellant . . . was never in question");Minnifield, supra (identification instruction properly refused where eyewitness was positive in her identification); Rowser, supra (identification instruction properly refused where there was "not one iota, scintilla, suspicion, or shadow of evidence that the State's (only) witness was anything but positive in her identification of appellant as the robber").
We see no reason to give a charge involving the various principles of eyewitness identification any more weight or importance than any other charge requested by a *Page 169 
defendant. Therefore, the governing principle as to whether the charge should be given is found in Chavers v. State,361 So.2d 1106, 1107 (Ala. 1978):
 "(O)ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however, weak, insufficient, or doubtful in credibility."
See also Ashlock v. State, 367 So.2d 560 (Ala.Cr.App. 1978), cert. denied, 367 So.2d 562 (Ala. 1979).
Under the circumstances of this case, the defendant was not entitled to have the charge given. The eyewitness, John Banks, saw a man leave with Waymon in Waymon's cab some thirty-five minutes before Waymon's body was found. Prior to the cab's departure, Banks observed this man for approximately five minutes at the well-lighted cab stand. Later that night, he assisted a police artist in drawing a composite of the man he saw leave with Waymon. Several attempts were made before the artist completed a composite which satisfied Banks. We note that this composite bears a marked resemblance to the defendant.
One month after the murder, Banks, without any hesitation, identified the defendant out of a five-man lineup. He also made a positive in-court identification of the defendant. At all times, Banks' identification of the defendant was unequivocal. Even defense counsel's vigorous cross examination did not substantially impair his identification of the defendant as the man who left the cab stand with the victim. Further, the trial court gave instructions on both the credibility of witnesses and alibi. Under these circumstances, we find no abuse of discretion in the trial court's refusal of the defendant's requested charge. Minnifield, supra; Rowser, supra. See alsoPeople v. Whitmore, supra; State v. Smith, 607 S.W.2d 737
(Mo.App. 1980); State v. Guster, supra.
Even if the failure to give the instruction constitutes error, our review of the evidence convinces us that there is no probability that the refusal injuriously affected the substantial right of the defendant. Turner v. State, 238 Ala. 352,355, 191 So. 396 (1939); A.R.A.P. 45.
 III
The defendant contends that the pretrial lineup was impermissibly suggestive and therefore rendered inadmissible Banks' in-court identification. This argument is based on the facts that the defendant was the shortest person in the lineup and that there was a delay between the murder and the lineup.
In determining whether a pretrial identification process was unduly suggestive, a "totality of the circumstances" test is used. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967,18 L.Ed.2d 1199 (1967); Caver v. Alabama, 537 F.2d 1333 (5th Cir. 1976), cert. denied, 430 U.S. 910, 97 S.Ct. 1183, 51 L.Ed.2d 587
(1977).
The murder/robbery in the present case occurred on August 17, 1981. As discussed above in Part II, that night Banks assisted in the drawing of a composite. During the month that followed, Mobile Police Sergeant John Boone showed Banks several photographic arrays, none of which contained defendant's photograph. Banks never identified any of the photographs as being a photograph of the man he saw at the cab stand on the night of the murder. On September 16, 1981, Banks positively identified the defendant out of a five-man lineup. According to Sergeant Boone, Banks did not hesitate in any manner in identifying defendant at the lineup. Moreover, at no time did anyone tell Banks that the man who had killed Waymon was in the lineup, nor did anyone suggest which person he should identify.
We have reviewed the color photograph of the lineup participants. Although it is true that the defendant is the shortest person in the lineup, that fact alone does not render the lineup impermissibly suggestive. Lewis v. State,399 So.2d 907 (Ala.Cr.App. 1981); McGee v. State, *Page 170 383 So.2d 881 (Ala.Cr.App.), cert. denied, 383 So.2d 884 (Ala. 1980); Tate v. State, 346 So.2d 515 (Ala.Cr.App. 1977). See also Caver v. Alabama, supra. On the whole, the physical appearance of the defendant is not so dissimilar to that of the other lineup participants that it renders the lineup unduly suggestive. Moreover, Banks testified that he did not count how many other participants there were in the lineup or pay any attention to their relevant heights, because the defendant was the only person he knew in the lineup. See McGee, supra.
The lapse of time between the murder and the lineup was barely one month. In view of the other facts involved, it does not appear that this affected the identification procedure. Cf.McCay v. State, 51 Ala. App. 307, 285 So.2d 117, cert. denied,291 Ala. 788, 285 So.2d 122 (1973) (upholding an identification made in a lineup conducted seven months and six days after a robbery).
We have carefully reviewed the circumstances involved in this case and find that the lineup procedure was not unduly suggestive. Therefore, Banks's in-court identification was properly admitted.
 IV
As required by Section 13A-5-53 (a), Code of Alabama 1975, this Court must review the propriety of the imposition of the death penalty in this case. Our review must include a determination of the following questions:
 (1) Was any error adversely affecting the rights of the defendant made in the sentence proceedings?
 (2) Were the trial court's findings concerning the aggravating and mitigating circumstances supported by the evidence?
(3) Was death the proper sentence in this case?
As to the first question, we have reviewed the sentence proceedings and have found no error adversely affecting the defendant's rights. We are also satisfied that the trial court's written findings concerning the aggravating and mitigating circumstances are fully supported by the evidence.
To answer the question of whether the death penalty was properly imposed in this case, we must determine:
 (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
 (2) whether an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence; and
 (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Alabama Code Section 13A-5-53 (b) (1975); see also Beck v.State, 396 So.2d 645 (Ala. 1981).
There is nothing in the record before us which even intimates that the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor.
Our independent weighing of the aggravating and mitigating circumstances leaves us with no doubt that the death penalty was appropriate in this case. There were no mitigating circumstances. However, there were three aggravating circumstances: (1) the defendant committed this crime while on parole from a life sentence for robbery, Section 13A-5-49 (1), Code of Alabama 1975; (2) the defendant had a previous capital conviction[1], Section 13A-5-49 (2); and (3) the present capital offense was committed while the defendant was engaged in the commission of a robbery, Section 13A-5-49 (4). *Page 171 
In regard to the final determination this Court must make, we note that the Alabama Supreme Court has compiled figures which show that approximately two-thirds of the death sentences imposed in this state are for capital offenses involving robbery. Beck v. State, 396 So.2d 645, 654, n. 5 (Ala. 1981). We find that the death penalty imposed on the defendant is not excessive or disproportionate to the penalty imposed in similar cases. See e.g., Coulter v. State, 450 So.2d 186 (Ala.Cr.App. 1982); Bush v. State, 431 So.2d 555 (Ala.Cr.App. 1982), affirmed, 431 So.2d 563 (Ala. 1983); Raines v. State,429 So.2d 1104 (Ala.Cr.App.), affirmed, 429 So.2d 1111 (Ala. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983).
We have searched the entire record as required by Rule 45A, A.R.A.P., and have found no error which adversely affected the rights of the defendant. Therefore, the judgment of the Mobile Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] Although this conviction was proved by the State, the trial judge did not include it in his written findings.