539 So.2d 337 (1987)
Samuel James NICKERSON
v.
STATE
6 Div. 627.
Court of Criminal Appeals of Alabama.
February 24, 1987.
On Return to Remand February 18 and July 19, 1988.
Rehearing Denied September 20, 1988.
Certiorari Denied February 10, 1989.
*338 L. Dan Turberville, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Fred F. Bell, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 88-32.
McMILLAN, Judge.
The record indicates that during the jury selection the following transpired:
"[Defense counsel]: Your Honor, there are only 5 blacks on the jury venire of 27 people. The Government prosecutor once again is using his strikes to systematically eliminate blacks from the trial. The Defendant is black. I move that a mistrial be declared and a new venire drawn, and that the prosecutor be instructed to not systematically eliminate blacks as prospective jurors.
"THE COURT: Overruled.
"[Defense counsel]: And then in this trial that being the fact that you overruled those motions, I ask that you now instruct him not to strike blacks just as a matter of systematically eliminating them.
"THE COURT: Overruled."
We remand this case to the trial court with instructions that if the court determines that the facts establish a prima facie showing of purposeful discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the court must give the prosecutor the opportunity to come forward with race-neutral explanations for his use of the peremptory strikes used to strike members of the appellant's race. If the prosecutor is unable to do so, then appellant is entitled to a new trial. *339 Ex parte Owens, 531 So.2d 21 (Ala.1987); Ex parte Jackson, 516 So.2d 768 (Ala. 1986); Acres v. State, [Ms. 3 Div. 843, February 10, 1987] (Ala.Cr.App.1987). If the trial court determines that the appellant is not entitled to a new trial, then the court shall make written findings on this issue and forward those, along with the transcript of the hearing, to this court.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
McMILLAN, Judge.
In accordance with the Alabama Supreme Court decision in Ex parte Branch, 526 So.2d 609, modified on rehearing (Dec, 4, 1987), this cause is remanded to the trial court to conduct proceedings consistent with the guidelines adopted in the Branch opinion. The trial court is instructed to file findings of facts and conclusions with this Court within a reasonable time after the entry of this remand.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
McMILLAN, Judge.
The appellant was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama (1975). He was convicted of robbery in the first degree and sentenced to life imprisonment.

I
This cause was remanded to the trial court with directions to conduct a hearing pursuant to Ex parte Branch, 526 So. 2d 609 (Ala.1987) modified on rehearing, [December 4, 1987]. In his findings of fact, the trial judge noted that, at the time of the trial, court reporters did not transcribe the questions to the venire except upon objection and, therefore, because of the lack of a complete transcript, the reasons given by the prosecutor for the strikes were stressed. The trial court found the reasons given by the prosecutor to be clear, specific, and legitimate. The court found "that there was no different treatment viz [sic] the same type of white compared to the same type of black" and "no questions were asked that would invite black strikes." The court held:
"We in the system tend to raise an eyebrow or demonstrate more violently when all blacks are struckthere being five and all five struck. This court feels and so finds that that the strikes of the prosecution were not motivated by intentional racial discriminatory striking of the blacks on the venire."
After a thorough review of the trial court's extensive findings of fact, we are convinced that the prosecutor did not use his peremptory strikes in a discriminatory manner or in such a way as to prejudice the appellant.

II
The appellant argues that the trial court erred in denying his motion to suppress the out-of-court identification. The appellant submits that the lineup was suggestive because of the disparate physical appearance of the other members of the lineup when compared to himself; specifically, that he was taller and heavier than the other participants. He also bases his claim of suggestiveness on the allegation that the witnesses' previous descriptions of the robber were inaccurate and because there was a four-month gap between the lineup and the robbery.
At trial, the members of the lineup were described in regard to age, height, and weight as follows:
1. 24 years old, 5 feet 10 inches, 160 pounds.
2. 26 years old, 5 feet 10 inches, 140 pounds.
3. 26 years old, 5 feet 10 inches, 130 pounds.
4. 25 years old, 6 feet 1 inch, 165 pounds.
5. 20 years old, 5 feet 10 inches, 142 pounds.
6. 25 years old, 5 feet 11 inches, 167 pounds.
*340 The appellant was number four in the lineup. The above stated statistics make it clear that the appellant did not "stand out." Although he was the tallest, another participant was only two inches shorter than he and the shortest person in the lineup was only three inches shorter than the appellant. Further, the appellant was not the heaviest participant in the lineup.
Although the appellant cites Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), to support his argument, that case is easily distinguished on its facts. In Foster, the appellant was one of three men in the lineup. The court stated that Foster "is a tall manclose to six feet in height. The other two men were shortfive feet, five or six inches. Petitioner wore a leather jacket which [the victim] said was similar to the one he had seen underneath the coveralls worn by the robber." 394 U.S. at 441, 89 S.Ct. at 1128. Furthermore, the victim could not positively identify Foster as the robber. In the present case, all of the men in the lineup wore white coveralls. Two of the victims positively identified the appellant as the robber and another victim picked out two men, one of which was the appellant.
"The fact, in and of itself, that there was some slight discrepancy in physical appearance among the participants of a lineup does not taint that identification procedure or render it suggestive as a matter of law. Tate v. State, 346 So.2d 515 (Ala.Cr.App.1977).
"`[T]he disparate physical appearances of the lineup participants is not alone sufficient to warrant a finding of suggestiveness. Caver v. Alabama, supra (537 F.2d 1333 (5 Cir. 1976), cert. denied, 430 U.S. 910, 97 S.Ct. 1183, 51 L.Ed.2d 587 (1977)); United States v. Reid, 517 F.2d 953, 965-66, n. 15 (2 Cir.1975); United States ex rel. Pella v. Reid, 527 F.2d 380, 384 (2 Cir.1975); United States v. Jackson, 166 U.S. App.D.C. 166, 172, 509 F.2d 499, 505 (1974). "Police stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required." United States v. Lewis, 547 F.2d 1030, 1035 (8 Cir. 1976), cert. denied, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977).' Swicegood v. Alabama, 577 F.2d 1322, 1327 (5 Cir.1978)."
Lewis v. State, 399 So.2d 907, 909 (Ala.Cr. App.1981). See also Crawford v. State, 485 So.2d 391 (Ala.Cr.App.1986); Jones v. State, 439 So.2d 824 (Ala.Cr.App.1983).
The appellant argues that the descriptions given by two of the witnesses to the police were inaccurate in that they misjudged his height and stature. He refers to the testimony by Joe Chiarella, who stated that he believed he had told the officers that the robber was "about five eight." However, the officer later testified that his investigative report indicated that Joe Chiarella had described the robber as "five ten, medium build." The appellant further refers to the same officer's testimony that his report showed that Juanita Eaton Avans, another victim, described the robber as "tall and thin." The appellant is six feet, one inch tall and weighs 165 pounds.
The quality of a victim's description of the perpetrator goes to the weight and credibility of the victim's identification rather than its admissibility. Johnson v. State, 453 So.2d 1323, 1328 (Ala.Cr.App. 1984). "The discrepancies or contradictions in [the victim's] testimony are factors bearing on the credibility of the witness and concern the weight and probative value to be given his testimony by the jury. These factors do not concern the admissibility of [the victim's] testimony." Phillips v. State, 409 So.2d 918, 920 (Ala.Cr.App.1981).
The four-month gap between the offense and the lineup did not affect the procedure's reliability or make the lineup unduly suggestive. See Jones v. State, 450 So.2d 165, 170 (Ala.Cr.App.1983), affirmed, 450 So.2d 171 (Ala.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 232, 83 L.Ed.2d 160 (1984) (gap between the offense and the lineup was barely one month); McCay v. State, 51 Ala.App. 307, 285 So.2d 117, cert. denied, 291 Ala. 788, 285 So.2d 122 (1973) (seven months and six days' gap between the robbery and lineup). Under the circumstances of this case, we find that the identification *341 was reliable and the lineup was not suggestive.

III
The appellant contends that the trial court erred in coercing the jury to return a verdict of guilty by using a "dynamite" or "Allen" charge. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The record indicates that the jury retired to commence deliberations at 4:41 p.m. on August 9, 1984, and returned to the courtroom with a question at 5:45 p.m. At 6:03 p.m. the jury indicated that they preferred to adjourn for the day. On the following morning, the trial court made the following statement to the jury:
"Ladies and gentlemen, I got the picture yesterday that y'all could not resolve this case. You sent me word this morning that you didn't think so. I just wanted to talk to you a little bit about the case and about the situation.
"Both the State and the Defendant want to resolve this case. Everybody is entitled to a disposition. If there is a failure to reach a verdict of this case, we'll have to put it back on the docket in a couple of months, try it again. Everything that you have seen done will be done again. Same witnesses, same lawyers, just another 12 jurors.
"In my judgment this is a most representative jury. I can't see getting another 12 people that are going to be any superior than the 12 I'm looking at. They're going to see the same evidence, same arguments. I don't see an additional 12 being in any better position to resolve the issue than the 12 I've got. I'm just saying this: I would like for each of you to reevaluate the position you have taken in these deliberations, of course, always consider with your conscience. Lay aside any pride of judgment, but examine the differences in the spirit of fairness and candor and reason together. No one is ever censored for disagreeing with the majority. If you can reach a verdict without sacrifice of principle or without sacrifice of conviction the Court, the lawyers, the parties and the taxpayers would appreciate it."
The jury retired at 9:48 a.m. and returned with a verdict at 10:44 a.m.
"It is quite clear that under Alabama law a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used."
Showers v. State, 407 So.2d 169, 171 (Ala. 1981).
The trial court, through its oral charge, merely explained to the jury the desirability and importance of reaching a verdict by giving an impartial instruction, which never indicated which way the verdict should be returned. Mahan v. State, 508 So.2d 1180, 1184 (Ala.Cr.App.1986). See also Murry v. State, 455 So.2d 53, 64 (Ala.Cr.App.1983), reversed on other grounds, 455 So.2d 72 (Ala.1984). The trial judge never inquired about the jury's numerical division of their vote, nor did he indicate to the jury by words or conduct that he "expected" a verdict. Channell v. State, 477 So.2d 522, 531 (Ala.Cr.App.1985), and cases cited therein. It is not improper for a trial court to urge the jury to consider the time and expense involved in the trial and the taxpayers' interest in the jury's reaching a verdict. Cross v. City of Decatur, 355 So.2d 405, 406 (Ala.Cr.App.1978). An evaluation of the trial court's charge reveals that it complied with the "Standards Relating to the Function of the Trial Judge," § 5.12(b), of the American Bar Association's Standards Relating to the Administration of Criminal Justice. See Strickland v. State, 348 So.2d 1105, 1111-12 (Ala. Cr.App.), cert. denied, 348 So.2d 1113 (Ala. 1977). The trial court's instruction was not coercive and did not prejudice the appellant. Franklin v. State, 502 So.2d 821, 827 (Ala.Cr.App.1986), cert. quashed, 502 So.2d 828 (Ala.1987).

IV
The appellant argues that the trial court erred in admitting into evidence a bag found at the scene of the robbery.
*342 The appellant bases his claim on the allegation that the State did not prove a sufficient chain of custody. Officer Robbins, an evidence technician with the City of Birmingham, testified that he found a brown plastic bag at the scene of the crime. He testified that after he lifted fingerprints off the plastic bag, he sealed it in a brown paper bag and placed it in the property room. While in the property room, the paper bag was torn. Officer Robbins testified that he did not know who had torn the bag but that, while getting out any other piece of evidence, another officer probably caused the tear. He testified that the plastic bag was in the same condition as when he found it at the scene of the offense. Although there was no testimony as to who tore the bag, Officer Robbins testified that he had already lifted the prints before the paper bag was torn.
"In reviewing the sufficiency of the chain of custody in drug cases, this court has stated that `the law is concerned with tracing the integrity of the substance only up through the completion of the analysis.' Congo v. State, 409 So.2d 475, 479 (Ala.Cr.App.1982). Likewise, we are concerned here with establishing the integrity of the evidence up through the fingerprint analysis and comparison."
Blanco v. State, 485 So.2d 1217, 1219 (Ala. Cr.App.1986). The fingerprint analysis was made before the bag was placed in the property room. Any alteration or substitution of the item after the analysis was finished would have been immaterial. See Blanco v. State, supra, at 1219.

V
The appellant argues that the trial court erred in admitting evidence of his prior conviction in California. The record indicates that defense counsel objected to the use of the California conviction because it was not properly certified pursuant to §§ 12-21-67 and 12-21-70, Code of Alabama (1975), in that it only contained certification by the clerk of the court and no authentication by a judge or by the Secretary of State. Although the record shows that the conviction was admitted during sentencing as State's Exhibit 1, it is not included in the record for our review. Therefore, this issue is waived. Allen v. State, 382 So.2d 1147, 1155 (Ala.Cr.App.), writ denied, 382 So.2d 1158 (Ala.1980). Cf. Callens v. State, 471 So.2d 482 (Ala.Cr. App.1984). Hammins v. State, 439 So.2d 809 (Ala.Cr.App.1983).
OPINION EXTENDED; AFFIRMED.
All the Judges concur except PATTERSON, J., dissenting with opinion.
PATTERSON, Judge, dissenting.
I respectfully dissent from the majority opinion. I find the explanations given by the prosecutor for his challenges of the five black venirepersons to be insufficient. Applying the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986), and Branch v. State, 526 So.2d 609 (Ala.1987) (as modified on rehearing, December 4, 1987), to the instant case, I do not reach the same conclusions as those reached by the lower court. I can conclude only that the prosecutor struck the five black venirepersons without race neutral reasons based on answers provided at voir dire or otherwise disclosed on the record. Slappy v. State, 503 So.2d 350 (Fla.Dist.Ct.App.1987), aff'd, 522 So.2d 18 (Fla.1988); Floyd v. State, [Ms. 4 Div. 802, May 24, 1988] 539 So.2d 357 (Ala.Cr.App. 1988).
Even though the trial court made a finding that appellant had failed to make a prima facie showing of discriminatory jury selection, it required the prosecutor to explain the state's strikes. After hearing the explanations, the trial court ruled that they were race neutral. Where this occurs, we should review only the trial court's finding of discrimination vel non, and not become bogged down on the question of whether the defendant made a prima facie showing. Currin v. State, 535 So.2d 221 (Ala.Cr. App.1988) (quoting with approval, United States v. Forbes, 816 F.2d 1006 (5th Cir. 1987)).
Based on the principles enunciated in the cases cited above as applied to the record before us in the instant case, it is my *343 opinion that the trial court's determination that the state's strikes were "race neutral" and not "race oriented" is clearly erroneous. Floyd v. State, supra. I would reverse this case.