The defendant was indicted and convicted for burglary in the second degree. Sentence was five years' imprisonment. *Page 178 
 I
Although the evidence was circumstantial, it was abundantly sufficient to support the conviction.
At approximately 3:45 on the morning of December 20, 1979, Mobile Police Officer R.B. English was on patrol in a business area of Mobile. As he approached an automobile parked on the side of a service road, the headlights of the vehicle came on and the automobile pulled out in front of him. Officer English stated, "I knew the area well, there's no movement around there at night in the morning hours."
Officer English stopped the automobile. The defendant's brother was driving. The rear seat had been removed from the car and there was a key in the lock of the trunk. The automobile was registered to the defendant. The defendant was not present.
After releasing the defendant's brother, Officer English returned to the spot where he had originally seen the automobile. From that location he observed that The Kelly-Springfield Wholesale Tire Center had been broken into. There were tires lying in the grass outside the warehouse.
English observed a path in the high grass from the warehouse to a muddy ditch which "opened up" to the service road. The ditch was filled with water, eight to twelve inches deep.
Later that morning Robert Edgar Jenkins, the warehouse manager, found his "red two-wheel dolly" in the field near the warehouse and one of his tires in the ditch alongside the service road. He described the trail leading from the building to the ditch: "And the weeds and the brush had been mashed down like there'd been quite a bit of traffic, you know, walking and what-not in that area." Jenkins found that eighty-five tires were missing from his warehouse.
After receiving a radio dispatch, Officer F.D. Jackson went to Bullshead Street which was about one quarter mile from the vicinity of the warehouse. He testified without objection:
 "When I answered the call; first I had received the call that there were two black males in this car and each time they would arrive at the eighteen hundred block of Bullshead Street, they would unload merchandise."
When Officer Jackson arrived, the defendant's brother was up on the front porch of a house. The defendant was "stooped down" beside a car and a hedge bush. Jackson testified, "As I pulled up the subject — as he seen the patrol car I spotted him, that's when he stooped." There were three or four new tires lying near the defendant. More tires were found on the back porch.
At 3:45 that morning, Sergeant O.C. Lockett received a call to proceed to the tire warehouse. Later he went to Bullshead Street where he saw tires from the warehouse.
 "There were several automobile tires in the front yard in plain view that had like labels on `em as I'd seen in the Kelly-Springfield Warehouse. The yard had additional tires in it; and the rear yard and the rear porch had a large quantity of these tires in it."
Lockett described the defendant:
 "He was dirty. His clothes, his pants in particular had a large quantity of both water and mud on `em. His — they were entirely soaked from just below the knees, all the way down."
This was "shortly after four o'clock in the morning."
The defendant told Sergeant Lockett that Louis Craig, his brother, had been working on his automobile and that he had just come by to see if his brother had finished so he could pick up his car. The defendant could not explain why he hid when Officer Jackson arrived. Forty-six tires were found at the house.
Mr. Jenkins was taken to Bullshead Street. He testified that both the defendant and his brother were "quite dirty and muddy, but one in particular was quite wet up to about knee high." Either the defendant or his brother had tried to break into Mr. Jenkins' warehouse before. Jenkins *Page 179 
testified that the tires found at the house on Bullshead Street had his shipping label on them.
The defendant maintains that the evidence is insufficient to support his conviction in that the facts do not show that he was in actual or constructive possession of any stolen tire. We disagree.
The evidence, although circumstantial, was clear and cogent leading to the inescapable conclusion that the defendant was guilty as charged. We do not think that the facts of this case justify any verdict other than that of guilty.
 II
The defendant maintains that the trial judge erred in not giving his requested charge containing the principle that the presumption of innocence is a matter of evidence. There is no merit to this argument.
Before any witness testified, the judge instructed the jury on this same principle: "[T]he Defendant is presumed to be innocent; and that presumption of innocence is a fact in the case just as though it were brought you by testimony from this stand." Although the circumstances of each particular case will govern, there may be no error in refusing a requested charge where that charge was fairly and adequately covered by the trial judge in his opening remarks to the jury. Gaston v.State, 359 So.2d 1170 (Ala.Cr.App. 1978).
In his oral charge to the jury at the close of the trial the judge again covered this principle: "[T]he Defendant, who is presumed to be innocent under our law and who has no burden of proving his innocence because that's a presumption of law which is evidence in the case; a fact in the case just as though it has been testified to from this stand."
The judge also gave one of the defendant's written requested charges which stated, "the defendant enters into this trial with a presumption of innocence, and this is a fact in the case which must be considered with all the evidence."
 III
The defendant also alleges that the trial judge did not instruct the jury on the principle that mere presence at the scene of a crime in insufficient to establish guilt as requested in two of the defendant's written charges.
The refusal of the requested charges was not reversible error. In view of the overwhelming evidence of the defendant's guilt, if any error were committed by the refusal of the charges, that error was harmless beyond any reasonable doubt. The reasonable inferences from the State's evidence support the finding that the defendant was more than merely present.
The trial court did charge the jury that before the defendant could be found guilty as an accomplice, they must find that there was a prearrangement or conspiracy to commit the offense.
Although the charge requested by the defendant is a correct statement of law, Watkins v. State, 357 So.2d 156, 159
(Ala.Cr.App. 1977), cert. denied, 357 So.2d 161 (Ala. 1978), it is not reversible error to refuse a charge which merely states an abstract principle of law without containing instructions as to the effect such doctrine has on the issues involved in the case. Williams v. State, 36 Ala. App. 26, 58 So.2d 646, cert. denied, 257 Ala. 337, 58 So. 653 (1952). Here, there were actually two "scenes" involved. The defendant was charged in count one with burglary. The "scene" of this crime was the Kelly-Springfield Wholesale Tire Center. The second count of the indictment charged buying, receiving or concealing stolen property. The "scene" of this crime was the house on Bullshead Street where the defendant and the tires were found. Under these conditions, a charge that mere presence at the scene of a crime is insufficient to establish guilt tends to be confusing. The question then becomes mere presence at which scene to establish guilt of which crime.
We have searched the record for prejudicial error and have found none. The judgment *Page 180 
of the Circuit Court is due to be affirmed.
AFFIRMED.
All Judges concur.