Appellant was indicted for the first degree murder of Charles McBride whose death was caused by a .38 caliber gunshot wound to the chest. Appellant was properly arraigned in the presence of counsel and interposed a plea of not guilty. Appellant was convicted of second degree murder and the jury fixed his punishment at twenty-five years in the state penitentiary. After sentence was imposed, appellant gave oral notice of appeal. Appellant has been furnished a free transcript and his trial counsel was appointed to represent him on appeal.
The state's evidence was sufficient to prove beyond any reasonable doubt that appellant was guilty as charged. Appellant's motion to exclude was properly denied and the defense rested without calling a witness.
Briefly, the state's evidence revealed that at approximately 2:30 a.m. on November 7, 1979, Leo Albert Simmons, Jr. and the deceased drove to a Seven-Eleven on Michigan Avenue in Mobile in Simmons' van to purchase a six-pack of beer. Simmons saw "two white males hugging each other" go inside the Seven-Eleven as they pulled up.
Mrs. Reba Irby Fantroy, the cashier at the Seven-Eleven stated that the two white males entered the store and were asking "for directions to a florist's in Theodore" when Simmons and the deceased came in. Mrs. Fantroy identified appellant as one of the white males and testified that appellant "kept saying, `I'm from Montgomery. I don't know where we at . . .'" Mrs. Fantroy further stated that appellant "didn't appear to be drunk . . . . to me he stood up straight. . . . He wasn't staggering," but that Mr. Thomas appellant's companion "was full of it." Barry Westley, a friend of the deceased, who was inside the Seven-Eleven at the time, also made a positive in-court identification of appellant.
Simmons paid for the beer, appellant and Thomas walked outside and the deceased followed behind them. As Simmons walked *Page 186 
outside to his van he heard some "mumbling" and heard the deceased say "excuse me, excuse me." When Simmons asked what was going on the deceased explained that appellant had "brushed against" him, but that he (the deceased) was telling appellant "excuse me." Simmons testified that he told the deceased to "go around and get in the van. Let's go." Before they could leave appellant returned from his car. "[H]e got close up to us and he said, `What you mean, what you want to do, what you want to do,' and then I say, `What's the problem,' and before I could do anything he pulled out something shiny and he shot two times and Charles fell." Appellant was approximately one foot away from the deceased when he fired the fatal shot. Simmons testified that the appellant next "aimed the gun at me and I hit the dying cockroach position . . . and then I low crawled all the way back into the store. He still shot at me, but he didn't get me."
Simmons stated that the deceased had not "threatened" appellant or made any kind of motion toward him prior to the shooting. Neither Simmons nor the deceased was armed. No weapons of any sort were discovered around the body. Simmons testified there was "no doubt" in his mind that appellant shot the deceased, that he would "always" remember it. An autopsy later revealed that the deceased had a blood alcohol level of .15 percent.
The firearms expert with the State Department of Forensic Science testified that the bullet which killed the victim was fired through the barrel of a .38 caliber pistol found in the possession of appellant "to the exclusion of all other weapons in the world."
Appellant and Thomas were apprehended at approximately 3:28 a.m. that morning and placed under arrest. The .38 caliber murder weapon was recovered from Thomas's El Camino pickup truck. At the time of his arrest appellant did not appear to be intoxicated, but police officers could smell alcohol on his breath.
Lieutenant Vincent Richardson of the Mobile Police Department, testified that Simmons, Westley and Mrs. Fantroy each picked appellant out of a lineup conducted at the police station between 4:20 and 4:35 that morning. Their identifications were made "immediately" without "any doubts." The foregoing facts were uncontroverted.
Appellant's sole contention of error on appeal is that the trial court erred to reversal by refusing the following written requested charges:
 "No. 4: The court charges the jury that if they find from the evidence that Charles McBryde had at least 0.10 percent or more by weight of alcohol in his blood then they may presume he was intoxicated."
 "No. 6: The court charges the jury that identification testimony is in the nature of opinion testimony and the jury is authorized to consider such testimony in the light of their own sound common sense, taking into consideration the opportunity of the witness to observe and know the facts from which the witness forms the opinion with regard to the identity of the persons, in determining what, if any, weight and credence the jury would give to such identification testimony, from the evidence."
 "No. 8: The court charges the jury that an opinion of the identity of the defendant, particularly when it is obtained in haste and excitement, should be treated with the utmost caution."
 "No. 9: The court charges the jury that no class of testimony is more uncertain and less to be relied upon than that of identity."
 "No. 10: The court charges the jury that if the defendant, at the time of the killing, entertained a reasonable apprehension of great personal violence, involving imminent peril to life or limb, and could not retreat in safety, or without putting himself at a disadvantage, then the killing would not be wrongful, and it would be the duty of the jury to acquit him."
 "No. 11: The court charges the jury that if you find from the evidence that the conduct of the deceased was such as to reasonably lead the defendant to believe *Page 187 
that the deceased was about to inflict some great bodily harm on his person, and the jury further find the defendant was not at fault in bringing on the difficulty, that the defendant could not have retreated without increasing his danger, and that defendant, acting on such reasonable belief of great bodily harm, fired a gun at said deceased and killed him, then the jury should acquit the defendant."
 "No. 12: The court charges the jury that if you have a reasonable doubt of the defendant's guilt growing out of the evidence or any part of it, you should find him not guilty."
 "No. 14: The court charges the jury that a reasonable doubt may arise either from the evidence or from a want of evidence."
We find, upon review of all the evidence and the court's oral charge, that the refusal of each of appellant's written requested charges was without error.
Requested charge 4 is based on Ala. Code § 32-5-193 (a)(3) (1975), which, by definition, is limited in criminal actions to "acts alleged to have been committed by any person whiledriving a vehicle while under the influence of intoxicating liquor. . . ." Section 32-5-193 (a) (emphasis added). Charge 4, thus, states a principle of law inapplicable to the facts at bar. Moreover, the deceased's name is misspelled and for that reason, too, charge 4 was correctly refused. State v. Owen,279 Ala. 281, 184 So.2d 362 (1966).
Requested charges 6, 8 and 9 deal with identification of an accused. While requested identification instructions which deal realistically with the shortcomings and trouble spots of the identification process should be given where the principle has not been covered by the court's oral charge, United States v.Telfaire, 152 U.S.App.D.C. 146, 469 F.2d 552 (D.C. Cir. 1972);Brooks v. State, 380 So.2d 1012, 1014 (Ala.Cr.App. 1980), the identity of appellant in the instant case was never in question. An eyewitness, who was within two feet of the shooting, testified that there was "no doubt" in his mind appellant shot the deceased. Two other witnesses were unequivocal in their testimony placing appellant near the scene. The identity of appellant here was simply not in issue.
The court in Telfaire, supra, upon which this court relied as persuasive authority in Brooks, supra, pointed out that the absence of a special identification instruction did not prejudice the accused's defense, where an eyewitness (victim of robbery) had adequate opportunity to observe the accused at the scene, and subsequently identified the accused after he had been taken into custody. Without question, Simmons had an adequate opportunity to observe appellant at the time of the shooting. Approximately two hours after the shooting Simmons "immediately" selected appellant out of a lineup. Thus, any failure to give a requested instruction on identification was harmless at most. ARAP, Rule 45.
We would point out that appellant attempts to interject the issue of self-defense through other requested charges, and to that extent, charges 6, 8 and 9 are abstract. Hawkins v. State,53 Ala. App. 89, 297 So.2d 813, cert. denied, 292 Ala. 723,297 So.2d 817 (1974). Plainly, the principles of self-defense and mistaken identity of the accused are incongruous. Furthermore, charges 8 and 9 are not correct principles of law and are not predicated on a "belief from the evidence." Thompson v. State,369 So.2d 50 (Ala.Cr.App. 1979); Hudson v. State, 335 So.2d 208
(Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala. 1976).
Requested charges 10 and 11 were correctly refused because they are abstract as applied to the facts in this case.Hawkins, supra. There is not one shred of evidence that appellant acted in self-defense. The undisputed evidence demonstrates that Simmons and the deceased were attempting to leave the Seven-Eleven when appellant returned from his vehicle and shot the deceased in cold-blooded murder.
Refused charges 12 and 14 were correctly refused because they were substantially and fairly covered by the trial court's *Page 188 
oral charge. Lambeth v. State, 380 So.2d 923 (Ala. 1979). In pertinent part the trial court's oral charge reads as follows:
 "I charge you at the very outset that the Defendant in this case entered into the trial of this case clothed with the presumption of innocence, and this presumption of innocence is a fact to be considered by you as evidence and should not be disregarded. This presumption of innocence remains with the Defendant throughout the trial until the State has proved his guilt beyond a reasonable doubt. There is no presumption of guilt against this Defendant merely because the Grand Jury of this County has returned this particular indictment. This indictment is neither evidence for nor against the Defendant. Again, the burden of convincing you beyond a reasonable doubt and to a moral certainty of the guilt of the Defendant rests upon the State of Alabama throughout the trial of this case.
 "In order to justify an acquittal you must have an actual and substantial doubt and not a mere possible doubt. A reasonable doubt is not a mere guess or surmise. It is not a forced or capricious doubt. If after considering all the evidence in this case you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt and it would be your duty to convict this Defendant. The reasonable doubt which entitles an accused to an acquittal is also not a mere vague or speculative doubt, but a reasonable doubt arising from the evidence and remaining after careful consideration of the testimony, such a reasonable doubt as fair-minded conscientious men and women would entertain under all the circumstances or the facts that you heard in this case. I will tell you that the State is not required to convince you of the Defendant's guilt beyond all doubt, but simply beyond all reasonable doubt. If after comparing and considering all the evidence in this case your minds are left in such a condition that you cannot say that you have an abiding conviction and to a moral certainty of the guilt of the Defendant then I will tell you you are not convinced beyond a reasonable doubt and the Defendant would be entitled to an acquittal at your hands. Some judges simply state that a reasonable doubt is the doubt that would be entertained by a reasonable person or is the doubt for which a reasonable person could give you a good reason for having.
 "I have said several times and I will say several more times beyond a reasonable doubt and to a moral certainty. I will tell you that if you prove one guilty beyond a reasonable doubt you have proven that person guilty to a moral certainty for the terms are synonymous. They mean the same thing."
The Supreme Court in Lambeth v. State, supra, held that if the jury is presented a discussion of the reasonable doubt standard as applied to the evidence in its totality, then the failure to give instructions similar to appellant's charges 12 and 14 is not error to reverse. 380 So.2d, at 925.
In addition, charge 14 is not hypothesized on a "belief from the evidence" and for that reason was properly refused.Thompson, supra. In Stafford v. State, 33 Ala. App. 163,31 So.2d 146 (1947), which appellant cites as authority for charge 14, the refused charge was predicated on a "consideration of all the evidence in this case" 31 So.2d, at 150. Charge 14 contains no predicate whatsoever.
We have considered each of the refused charges argued in brief and have found the refusal thereof to be without error. In addition, we have searched the record, as required by law, for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 189