531 So.2d 1245 (1987)
Jerome SMITH
v.
STATE.
6 Div. 5.
Court of Criminal Appeals of Alabama.
February 10, 1987.
Rehearing Denied March 24, 1987.
Certiorari Denied June 19, 1987.
On Return to Remand August 23, 1988.
*1246 Roger A. Brown and Russell T. McDonald, Jr., Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Beth Slate Poe, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-898.
McMILLAN, Judge.
The appellant, Jerome Smith, was convicted of the capital offense of intentional murder during the course of committing a theft, in violation of § 13A-5-40(a)(2), Code of Alabama (1975). The jury recommended a punishment of life without parole, and, following a sentencing hearing, the trial court followed the jury's recommendation.
The appellant argues that he was denied a fair trial because of the prosecution's exclusion of members of his race from the jury. The record establishes that the appellant is black and that of its 14 strikes the State used the first thirteen against black potential jurors. The defense counsel objected as to each separate strike and again at the close of the jury selection. Thereafter, he moved for a mistrial, to which the prosecutor responded, "I'd just like to say for the record that there was no systematic exclusion and that's all I have." The court then overruled the defense counsel's motion for a mistrial. No further explanations were given by the prosecutor for his thirteen strikes.
"[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, [430 U.S. 482] at 494, 97 S.Ct. [1272] at 1280 [51 L.Ed.2d 498], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges *1247 constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.' Avery v. Georgia, [345 U.S. 559] at 562, 73 S.Ct. [891] at 892 [97 L.Ed. 1244]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
"....
"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Batson v. Kentucky, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 1722-23, 90 L.Ed. 2d 69 (1986).
Under Alabama constitutional law, the Batson decision is to be applied retroactively. Jackson v. State, 516 So.2d 768 (Ala.1986).
The prosecution must show that the challenges "`were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race.'" Jackson v. State, supra, at 772, quoting State v. Neil, 457 So.2d 481, 487 (Fla.1984). The district attorney has not forwarded his reasons for striking the thirteen blacks from the jury. Therefore, this case is remanded to the trial court in order for the prosecutor to come forward with race-neutral explanations for his use of the thirteen peremptory strikes, and, if he is unable to do so and the trial court determines that the facts establish a prima facie case of purposeful discrimination, the appellant is entitled to a new trial. Should the trial court find no prima facie showing of purposeful discrimination, a return shall be filed with this court containing the evidence at this hearing and the trial judge's findings following the hearing.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
McMILLIAN, Judge.
This cause was remanded, in accordance with the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the circuit court with instruction that the Court give the prosecutor an opportunity to come forward with explanations for his use of peremptory strikes. The trial court was further instructed, should no prima facie case of purposeful discrimination be established, to file a return to this Court containing the evidence offered in the hearing and the trial judge's findings of fact.
In accordance with our instructions, the lower court conducted a hearing, in which the prosecutor stated the following reasons for his strikes of black venire persons:
"1. Debra Munford was single, and had a fixed opinion against capital punishment.
"2. Carmen Edwards was in the process of getting a divorce, and her husband had previously been charged with robbery.
"3. John Crum was opposed to capital punishment, had problems with sitting in judgment of others, and was familiar with the case.
"4. Rosa Payne had two small grandchildren to take care of, and she had stated that she did not want to be on the jury.
"5. Robert Lewis was unemployed, appeared to have no home life, and no interest in the community. The prosecutor further stated that Lewis was unresponsive to questions asked him on voir dire.
"6. Mary Marsh initially responded as being opposed to capital punishment, and rolled her eyes when the prosecutor asked her questions.
"7. David McCants, Jr., had indicated that he had to care for his mother, who was 75 years old and epileptic.
"8. Arthelda Odum was young, unemployed, and was opposed to capital punishment. The prosecutor also stated that *1248 Odum was inattentive during portions of the voir dire examination.
"9. Nathaniel Smiley was young, single, and appeared to be asleep or inattentive during voir dire.
"10. Betty Boles was struck because she was a social worker and because she had sat on a jury in a criminal case that returned a verdict of not guilty.
"11. Yvonne Kennedy was struck because she complained that jury duty would interfere with her caring for her young baby.
"12. Tyrone Booker was struck because he nodded his head in agreement with the appellant's attorney during counsel's voir dire examination of other prospective jurors.
"13. Geraldine Given indicated that she had a fixed opinion against capital punishment, and that she had religious and moral convictions against sitting in judgment of others."
The State used its last strike to remove a white female for much the similar reasons. On return to remand, the lower court found that the appellant failed to establish a prima facie Batson violation, noting that the State's use of its peremptory strikes was race-neutral, and was for the sole purpose of excluding members of the black race from the jury.
Although this cause was remanded prior to our Supreme Court's opinion in Ex parte Branch, 526 So.2d 609 (Ala.1987), the record in this case is sufficient for an application of the guidelines in Branch. After applying the principles of Batson and Branch to the instant case, we conclude that the trial court accurately concluded that the prosecutor did not use his peremptory strikes for a discriminatory purpose.
The Branch court held:
"After a prima facie case is established, there is a presumption that the peremptory challenges were used to discriminate against black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. The offending party then has the burden of articulating a clear, specific and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. However, this showing need not rise to the level of a challenge for cause. Jackson, supra; Neil, 457 So.2d at 487; [People v.] Wheeler, 22 Cal.3d [258] at 281-82, 583 P.2d [748] at 765, 148 Cal.Rptr. [890] at 906." Id. at 623. (Emphasis in original).
Moreover, the Court held in Ex parte Jackson, 516 So.2d 768 (Ala.1986), quoting State v. Neil, 457 So.2d 481 (Fla.1984): "`The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause. If the party shows that the challenges were based on the particular case at trial, the parties or witnesses, or characteristics of challenged persons other than race, then the inquiry should end and the jury selection should continue.'"
See also Funches v. State, 518 So.2d 781, 783 (Ala.Cr.App.1987).
The record of this case indicates that the questions asked by the prosecutor on voir dire in the present case were clear, specific, and predicated on the facts of this case. Nor does it appear that black venire persons were asked questions on voir dire that were designed to invite strikes. The reasons contained in the record for strikes of black veniremen were clear, specific, pertinent to the facts of this case, and race-neutral in nature.
"Batson requires this Court to give the trial court's determination `great deference'." Currin v. State, [Ms. 2 Div. 639, May 24, 1988] (Ala.Cr.App.1988). Moreover, "[w]e may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous." Branch, supra, at 625. Because the findings of the circuit court that the prosecution did not use its peremptory challenges to purposefully exclude blacks from the jury are not clearly erroneous, they will not be reversed on appeal by this Court.

II.
The appellant contends that the trial court improperly restricted his cross-examination *1249 of two of the State's witnesses and thereby violated his rights to confront his accusers guaranteed him by the Sixth and Fourteenth Amendments.
During appellant's cross-examination of State's witness Willie Gilmore, Jr., the following exchange occurred:
"Q. Do you remember the officers asking you, did he have any facial hairs? And you said, None that I noticed. He was clean shaven. I know that he didn't have a beard of [sic] anything. If he had a moustache
"MR. RUSSELL: We object, may it please the Court. I think that's what his answer was. Unless he reads
"THE COURT: Sustain.
"MR. RUSSELL: the whole statement. One way or the other.
"THE COURT: I sustained the objection." (R 385)...."
"....
"Q. Well, did you tell the officer back then that he did not
"MR. RUSSELL: We object to that, may it please the Court. He's already answered the question.
"THE COURT: I believe his answer was as far as he knew he didn't have one,
"MR. MCDONALD: So, I'll sustain the objection."
"....
"Q. What was your entire answer to that? Would you read it there, please, sir?
"A. It says, None that I noticed. He was clean shaven. I know he didn't have a beard of [sic] anything. He had a moustache but
"Q. He had a moustache, right?
"A. it was very small."
This court has written:
"The right to wide ranging cross-examination, as well as a thorough and sifting cross-examination, belongs to everyone. § 12-21-137, Code of Alabama 1975; Ball v. State, 337 So.2d 31 (Ala.Cr.App.), cert. denied, 337 So.2d 39 (Ala.1976); Bickerstaff v. State, 369 So.2d 315 (Ala. Cr.App.1979); Trawick v. State, 431 So. 2d 574 (Ala.Cr.App.1983). `Cross-examination is not limited to matters brought out on direct examination, but extends to all matters within the issues of the case.' Trawick, supra. Furthermore, the range and extend of the cross-examination of a witness is a matter within the sound discretion of the trial court, and such decision will not be reversed upon appeal unless a clear abuse of discretion exists. Malone v. State, 358 So.2d 490 (Ala.Cr. App.1978); Renfroe v. State, 382 So.2d 627 (Ala.Cr.App.), cert denied. 382 So.2d 632 (Ala.1980); Weaver v. State, 407 So. 2d 568 (Ala.Cr.App.1981)."
Arthur v. State, 472 So.2d 650, 661 (Ala. Cr.App.1984).
In Ball v. State, 337 So.2d 31, at 35 (Ala.Cr.App.1976), this Court held:
"The latitude and extent of cross-examination [have] been held to be subject to some limitation. Both state and federal decisions vest trial judges with limited discretion to cut off questions on cross-examination which (1) are repetitious, (2) concern wholly collateral matters, (3) are irrelevant, or (4) are harassing, annoying or humiliating. Connell v. State, 294 Ala. 477, 318 So.2d 710 [1974], Cox v. State, 162 Ala. 66, 50 So. 398 [1909]; Wright v. State, 49 Ala.App. 539, 274 So.2d 95 [1973]; U.S.C.A. Amend. 6, notes 1091, et seq.
"Even though trial judges are vested with certain discretion, the right of cross-examination is a fundamental constitutional right, and in cutting off cross-examination, a trial judge treads on extremely perilous ground. Upon proper objection by the accused, as was the case here, appellate courts should closely scrutinize any limitation placed upon that right."
The record of this case indicates that counsel on cross-examination initially asked Gilmore if the person who took the money from him was clean-shaven, and Gilmore responded "as far as I can remember; yes sir." Counsel then asked Gilmore about a statement describing one of the suspects that he gave to police on the day the robbery-murder occurred. When counsel then *1250 attempted to read a portion of this statement to Gilmore, the prosecutor objected, arguing that either all of the statement should be read to Gilmore or none of it. The Court sustained the objection. Counsel then asked Gilmore if the person he observed during the commission of the crime had hair on his chin, and the prosecutor again objected on the ground that Gilmore had already answered the question. Again, the court sustained the objection. At this time, after counsel explained the purpose of his inquiry, the court permitted him to again ask Gilmore whether the person he saw had a beard or a goatee, and Gilmore answered the question.
We find no impermissible limitation of cross-examination in this instance. Subsequent questions of the same nature were repetitive and were properly prohibited by the trial court. Ball, supra. Moreover, as the court eventually allowed counsel to repeat the question, we see no reason to assign error on this ground.
During the cross-examination of State's witness Parthenia Walker, the following exchange occurred:
"Q. But in your best judgment, this is not the man, was it?
"MR. RUSSELL: Now, we object to that, may it please the Court.
"MR. McDONALD: This is cross-examination, may it please the Court.
"MR. RUSSELL: It calls for an opinion on the part of the witness that she does not have. She said she cannot say.
"Q. In your best judgment, this was not the man that passed
"MR. RUSSELL: I'm sorry, I didn't hear the Court's ruling.
"Q. you on that occasion, was it?
"THE COURT: I'm going to sustain the objection to the form of that question.
"MR. McDONALD: Well, we except.
"THE COURT: Rephrase your question.
"Q. Well, in your best judgment, this wasthis was
"May I point out to the Court that this is cross examination and I may lead and I may suggest and with that
"THE COURT: Rephrase your question.
"MR. McDONALD: I will ask it.
"In your best judgment, this was not the man that passed you on that occasion, was it?
"MR. RUSSELL: We would object because it calls for an opinion from the witness that she says
"MR. McDONALD: In your judgment.
"MR. RUSSELL:that she has testified that she does not have an opinion.
"THE COURT: I believe she says she does not know, is not able to identify, so I'm going to sustain the objection.
"MR. McDONALD: We except."
The record of this case indicates that Ms. Walker testified on direct examination that she could not say whether the appellant was the person she saw in the store at the time the robbery-murder occurred. The trial court did not allow the appellant's counsel to ask the question as phrased because this witness had already testified that she could not answer the question. Because the question was repetitious in nature, the trial court did not err in prohibiting the appellant's attorney from asking it. Ball, supra.

III.
The appellant next argues that the trial court erred in allowing the prosecution to ask leading, suggestive, and repetitious questions during direct examination of its own witnesses. The appellant cites nine exchanges that occurred between the prosecutor and one of his witnesses, Sherida Pettaway, in support of this argument. Initially, it must be noted that six of the nine incidents cited by the appellant involve objections raised by the appellant that were sustained by the trial court. As there has been no adverse ruling by the lower court, these matters are not properly before us for review. Britain v. State, [Ms. 1 Div. 519, May 24, 1988] ___ So.2d ____ (Ala.Cr. App.1988); Breedlove v. State, 482 So.2d *1251 1277, 1282 (Ala.Cr.App.1985); Walker v. State, 416 So.2d 1083 (Ala.Cr.App.1982).
As to the remaining exchanges, the record indicates that the leading nature of the questions asked by the prosecutor failed to alter the response of the witness. When asked initially if she could say whether the appellant was the man she saw shoot the security guard, Pettaway answered "No." Subsequent to the exchanges about which the appellant complains, Pettaway responded "I never seen the man." The appellant suffered no prejudice due to the questions, and thus, this issue presents no grounds justifying reversal. See Rule 45, Alabama Rules of Appellate Procedure.

IV.
Finally, the appellant argues that the trial court erred to reversal in refusing to give two of his requested jury instructions. Because the appellant concedes in his brief that one of these requested charges was properly denied by the trial court pursuant to the decision of this Court in Shields v. State, 397 So.2d 184, 187 (Ala.Cr.App.), writ denied, 397 So.2d 189 (Ala.1981), our discussion is limited to the other requested charge, which states:
"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense. Where, as in this case, the only evidence offered by the prosecution to connect the defendant with the crime charged, is the identification of an eyewitness, the testimony alone carried the burden on the issue of reasonability. The defendant is entitled to a verdict of acquittal if the persuasive force of the identification testimony is not sufficient to convince you of his responsibility beyond a reasonable doubt and to a moral certainty."
The proposition that "[i]dentification testimony is an expression of belief or impression by the witness" contained in the first sentence of this charge appears confusing and misleading. Accordingly, the trial court did not err in refusing to give this charge. Wilbanks v. State, 289 Ala. 171, 266 So.2d 632 (1972); Crenshaw v. State, 374 So.2d 448 (Ala.Cr.App.1979). Moreover, this charge merely states abstract principles of law without containing instructions as to their effect or application to the issues involved in this case. Craig v. State, 389 So.2d 177 (Ala.Cr.App.1980); Bullard v. State, 369 So.2d 877 (Ala.Cr. App.1979); Simmons v. State, 368 So.2d 315 (Ala.Cr.App.1979). Such charges are properly refused. Edwards v. State, 452 So.2d 487, 498 (Ala.Cr.App.1982), rev'd on other grounds, Ex parte Edwards, 452 So. 2d 503 (Ala.1983); Hudson v. State, 335 So.2d 208 (Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala.1976).
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
OPINION EXTENDED; AFFIRMED.
All the Judges concur.