TAYLOR, Judge.
The appellant, Christopher Mack, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975, and was sentenced to life imprisonment.[1]
The state’s evidence tended to show that on September 24, 1992, the victim, Joseph McDaniels, was shot as he sat in his car at an intersection in the Cedar Park Housing Project in Montgomery, Alabama. Alen Stilwell of the Aabama Department of Forensic Sciences testified that the victim died as the result of extensive internal bleeding caused by a gunshot wound to the left upper back. Stilwell testified that upon entry, the bullet traveled downward through the victim’s left lung and the bottom of the victim’s heart.
Lonnie Lewis, the victim’s brother, testified that on the morning of the murder, he saw the appellant sometime between 2:00 a.m. and 3:00 a.m. at Cleveland Court in Montgomery. He testified that the appellant was wearing a black and white jumpsuit with a logo of a National Football League team. The appellant showed him a nickel-plated handgun and told him that he was going to shoot someone. He said that sometime later, he again encountered the appellant and that the appellant told him, “I shot me a mother fucker,” or, “I burned me a mother fucker.” Lewis testified that at approximately 5:00 *1310 a.m., Alonzo Jackson told Lewis that his brother had been shot.
Alonzo Jackson testified that he saw the victim around 4:00 a.m. the morning of the murder. He testified that the victim said that he was going to Cedar Park, a housing project in Montgomery, and that he got into the ear with him and went along. Jackson testified that in Cedar Park, he saw two males standing on a corner. One of the males whistled and the victim stopped the car. Both males approached the car. Jackson testified that one of the males approached the car from the rear on the victim’s side. That male bent down and looked in the car at Jackson, and Jackson testified that he got a good look at the male at that point. Jackson testified that the male nearest the car was wearing a black and white jumpsuit, possibly with a Los Angeles Raiders emblem on it. The victim asked the male if he had seen “Shankman” (“Shankman” was Arthur Carter’s street name), but the male did not say anything. Without warning, the male fired a gun into the car, and Jackson and the victim scrambled to get out of the car, as the male fired two more shots at them while they were attempting to retreat. Jackson testified that he got another good look at the male who had shot at them as he exited the car. Later that morning, Jackson was shown a photographic lineup at the police station, and he identified the appellant as the man who had shot the victim. Jackson testified that there was “no doubt” in his mind that the appellant was the man whom he saw approach the victim’s car and shoot into the car on the morning of September 24, 1992.
Tracie Lowery, the appellant’s girlfriend, testified that the appellant was at her house on the morning of September 24, 1992, between the hours of 2:00 a.m. and 3:00 a.m. She stated that at that time the appellant was wearing a black jumpsuit or black overalls.
Beverly McLain testified that she knew the appellant because he was the father to two of her grandchildren. She testified that the appellant came to her house on the morning of September 24, 1992, at approximately 4:45 a.m. The appellant was looking for Will Rivers, the boyfriend of one of McLain’s daughters. McLain testified that the appellant told her that he was in trouble, but that he did not explain what kind of trouble.
The defense called Detective J.R. Ward of the Montgomery Police Department as a witness and asked him about the statement he took from Alonzo Jackson. Ward testified that Jackson initially had said that the shooting happened so fast that he did not see anything. On cross-examination, Detective Ward testified that Jackson had also said in his statement that he thought the person who shot the victim was approximately five feet eight inches in height, with short hair,- and was wearing a black jumpsuit. This statement was taken before Jackson picked the appellant out of the photographic lineup.
The appellant also took the stand on his behalf. He testified that he had visited his girlfriend on the morning of September 24, 1992, and that he had left at approximately 1:30 a.m. and went home. According to the appellant, he got to his house at 2:00 a.m. He listened to the stereo and fell asleep on the couch, where he stayed until 6:30 a.m. The appellant stated that in the early morning hours of September 24, 1992, he was wearing black pants and a white T-shirt with a logo of an American flag, and that he did not own a black jumpsuit or black overalls.
I
The appellant contends that the trial court erred in refusing to give his written requested charge or any charge concerning identification testimony where, he alleges, identification was a major part of the state’s case.
The record shows that the appellant requested the following charge concerning identification:
“The State has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime charged in the indictment.
“The reliability of eyewitness identification has been raised as an issue in this case and deserves your attention. Such testimony is an expression of belief or impression by the witness. Its value de-. pends upon the opportunity the witness had to observe the offender at the time of *1311 the offense and later to make a reliable identification, and upon the influences and circumstances under which the witness made the identification.
“You must consider the credibility of each identification witness in the same way as any other witness. Consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.
“I suggest that you ask yourself a number of questions: Did the witness have an adequate opportunity at the time of the ciime to observe the person in question? What length of time did the witness have to observe the person? What were the prevailing conditions at that time in terms of visibility or distance and lighting? Had the witness known or observed the person at earlier times? Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection?
“After examining all of the testimony and evidence in the case, if you have a reasonable doubt as to the identity of the Defendant as the person who committed the offense charged, you must find the defendant not guilty.”
(Emphasis added). The trial court refused the appellant’s requested charge and did not give any charge concerning identification testimony.
First, we will address the sufficiency of the appellant’s requested charge. This court has held, “The proposition that ‘[identification testimony is an expression of belief or impression by the witness’ contained in the first sentence of this charge appears confusing and misleading.” Smith v. State, 531 So.2d 1245, 1251 (Ala.Cr.App.1987).
Second, we address the circumstances surrounding the appellant’s requested charge and the trial court’s decision not to give any charge regarding identification.
“[0]ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however, weak, insufficient, or doubtful in credibility.”
Jones v. State, 450 So.2d 165, 169 (Ala.Cr.App.1983), aff'd, 450 So.2d 171 (Ala.1984).
Jackson, who was only feet away from the victim during the shooting, testified that he had “no doubt” that the appellant was the male who shot the victim. See Shields v. State, 397 So.2d 184, 187 (Ala.Cr.App.), writ denied, 397 So.2d 189 (Ala.1981). Jackson also picked the appellant from a photographic lineup. Further, there was the testimony from Lewis that the appellant had made statements to the effect that he was going to kill someone and later said that he had killed someone. Beverly McLain’s testimony put the appellant near the scene of the murder at the approximate time of the murder. Last, Trade Lowery testified that the appellant was at her house at the same time the appellant contended he was asleep at home.
The appellant further contends that the trial court erred in not giving any instruction regarding identification. As Judge Bowen stated in Parker v. State, 568 So.2d 335, 339 (Ala.Cr.App.1990), “[T]he better practice is for the trial judge to instruct the jury on the principles of mistaken identity where identification is a major issue at trial and where the defendant has made a proper request.” The record shows that the trial judge did give the jury a lengthy instruction concerning witness credibility. The court •gave the following instruction:
“[O]ne of the things you have to do is to decide the credibility of the witnesses. That is, who you believe. You don’t come into this courtroom and leave your common sense outside that door. You don’t operate in this courtroom in a vacuum and leave your experience and lifetime experience outside that door. You bring it all in here with you when you sit in that jury box. One of the things you have to decide is (sic) decide the credibility of the witnesses. That is, who you believe and who you do not believe.
[[Image here]]
“Now the law doesn’t have any particular rule to tell you how to evaluate a witness’ credibility or a person’s credibility, other than I suggest to you that you evaluate a person’s credibility in court the same way you do outside of court....
*1312 “How do you do it? You do it the same in court as you do outside of court. You look at the person. I call it reading a person, for lack of a more sophisticated way of saying it. Reading them. Look at them, decide the body language, et cetera, look in their eyes and look at them. And do I believe what you telling me? That’s just the way you judge it. You are judging the person’s credibility.
“The law says some of the things you can look at would be the demeanor, the behavior, the interest, any bias, prejudice, et cetera, in evaluating a witness’ credibility. Whether or not a witness was in a position to know what he or she testified to you about. The law says that if you find a witness credible but some part of the testimony is not credible, the first thing you want to do is reconcile it and try to bring it in with all the rest of the testimony. If you find that you cannot do that, the law says you can disregard any witness’ testimony as long as do not — that you find not credible or worthy of belief, as long as you do not disregard any witness’ testimony arbitrarily or capriciously.”
The court should have given an instruction on identification because it was an issue in the case. However, the above instruction was sufficient to alleviate any error which may have occurred. The trial court thoroughly charged the jury on the credibility of the witnesses. We find no reversible error here.
“Even if the failure to give the instruction constitutes error, our review of the evidence convinces us that there is no probability that the refusal injuriously affected the substantial right of the defendant.”
Jones, 450 So.2d at 169. See also Shields, supra.; Turner v. State, 238 Ala. 352, 355, 191 So. 396 (1939).
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.

. The appellant's conviction for murder involved the use of a firearm. Section 13A-5-6(a)(4), Code of Alabama 1975, was used in sentencing the appellant.